GEORGE E. MAUSERT, appellant,

*v.*

CHRISTIAN FEIGENSPAN (a corporation), respondent.

[Submitted March 25th, 1905.   Decided December 6th, 1905.]

The president of a corporation has no power, *virtute officii*, to alter the provisions of a formal agreement, under seal, entered into by the corporation itself.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Emery, who filed the following opinion and memorandum:

In this case both complainant and defendant agree that complainant is entitled to the specific performance of the contract between them, dated May 20th, 1902, in relation to the execution of a lease, and as to the lease itself the case is one for the settlement of the terms or conditions to be inserted in the lease. Two disputes arise in reference to these terms—*first,* whether the defendant is entitled to insert a clause against assignment or subletting without consent; and *second,* whether complainant is entitled to have inserted in the lease a modification of the clause, which was, under the contract, to be inserted in the lease, relating to the sale of beer or liquors on the premises. On the first point, I conclude that the clause against assignment and subletting without defendant's consent is not to be inserted. The agreement does not provide for such clause, and it expressly contemplates assignment of the agreement; and the last clause of it provides that it shall bind the assigns of the parties. The defendant is, however, entitled to have the lease recite that it is executed pursuant to the agreement, and to recite the provisions of the agreement relating to the use and sale of defendant's goods. Defendant is entitled to this in order that

when the lease is executed it may be in a position to enforce against any assignee of complainant whatever rights, legal or equitable, it may have by reason of the agreement and its provisions for binding assignees.

As to the modification of the agreement contained in the written contract of May 20th, 1902, for the sale of liquors, my conclusion is that a covenant of this character is a restriction of the use of lands, and within the statute of frauds. The subsequent modification relied on by complainant in his bill is denied in the answer, and except to the extent set up by the answer is proved only by parol. The statute of frauds not having been set up in the answer, the contract, as modified, can be enforced so far as admitted by the answer, but only to that extent. *Ashmore* v. *Evans, 11 N. J. Eq. (3 Stock.) 151 (Chancellor Williamson, 1856)* ; *Gough* v. *Williamson, 62 N. J. Eq. (17 Dick.) 526.* Defendant claims that the covenant is not within the statute because it is a purely personal covenant, collateral to the use of the land, and does not run with the land. Whether the covenant runs with the land is not, at least in equity, the test of the applicability of the statute, for in equity it is settled that an assignee of land with notice is subject to the restrictions, irrespective of the question whether the covenant runs with the land. *Kirkpatrick* v. *Peshine, 24 N. J. Eq. (9 C. E. Gr.) 206, 213; Brewer* v. *Marshall, 19 N. J. Eq. (4 C. E. Gr.) 537, 542 (Court of Errors and Appeals, 1868).*

In the present case, I think it was clearly intended by the parties that the covenant related to the premises. The agreement recites that the object of defendant in taking the option and lease was to open the premises for one of its customers for the sale of its goods, and that the complainant desired to establish himself in the premises as a customer of defendant for the purpose of opening a saloon and selling the goods of defendant. The covenant which is to be inserted in the lease of the premises is that complainant is "to use and sell exclusively the goods manufactured by defendant, except those imported from a foreign country outside of the United States."

Taking the whole agreement together, this covenant clearly relates to the exclusive use and sale on the leased premises of

defendant's goods for the term of the lease (five years), and is to that extent a covenant restricting the use of the lands leased, and is an equity attached to the lands by the lessor. It is therefore within the statute of frauds. In *Manchester Brewery Co. v. Coombs, 2 Ch. Div. 608, 612 (1901)*, a covenant by a lessee to buy beer of the lessors and "their successors in business," was held to be a covenant running with the land.

There have been no acts of part performance to take the case out of the statute. In reference to the modification of the contract, I think, also, that the point is well taken that the authority of the president of the corporation to modify the contract in the manner claimed by complainant has not been shown. The clause relating to the sale of liquors will therefore be the clause in the agreement, with the modifications stated in the answer.

*Second.* In reference to the amount due upon the mortgage, the principal dispute is whether the complainant, in estimating the amount due upon the mortgage, is entitled to a deduction of the amount paid by defendant in the settlement of the debts incurred by Sicke & Company, the contractors, to materialmen and others, for materials and labor included in their contract, and for which the contractors had been previously paid. These creditors claimed liens upon the leasehold and fixtures, and at the time of giving the mortgage the claims had not been paid. The total amount of these claims was included in the mortgage, with the understanding that complainant should have the benefit of any deduction in the claims made in their settlement, and after such deductions, which were in all instances made with complainant's knowledge and assistance, the claims were paid by defendant in the belief that they were included in the mortgage.

Complainant now claims that these duplicate payments, as they are called, became necessary because of the neglect of defendant's attorneys in not procuring the contract to be filed, and a large amount of evidence was produced on both sides bearing upon the question whether the failure to file the contracts was the fault of these attorneys of defendant, or of the complainant himself. Without undertaking to decide this question

in this suit, my conclusion upon the whole evidence is that the mortgage in question was given and received with the express intention and understanding that the defendant, so far as it afterwards paid these claims, was to be secured by the mortgage, and that it was not intended that as between complainant and defendant thus paying them the mortgage should be subject to any deduction by reason of the complainant's claim that the attorneys were liable for the payments, and I conclude that the complainant, having procured these subsequent payments by defendant, knowing that in so paying it relied on its security under the mortgage, is now on the entire evidence estopped from disputing that they are so secured. Complainant, however, on making the payments, is entitled to be subrogated to any claim defendant may have against its attorneys for the alleged negligence. The amount due upon the chattel mortgage will therefore not be reduced by these claims.

*Third.* Complainant, as a condition to the execution and delivery of the lease, should be required to pay the amount due on the chattel mortgage, the time fixed for payment by the agreement having expired. It is true that the original agreement did not provide for such payment as a condition, and I think the parties contemplated the execution of the lease before the maturity of the mortgage.

It appears by the evidence, however, that the failure to execute any lease before the execution of the mortgage was due to the request of the complainant that the defendant should continue to hold the title, and was not due to any dispute between the parties as to the terms of the lease. When the defendant, in July, 1903, offered to make the lease, and submitted one for execution, there was probably an objection raised by the complainant as to the insertion of the clause against assignment, but the failure to settle this question and execute a lease at that time was not due to that objection, which was left open. The defendant, holding the legal title to the premises, paid the amount secured by the mortgage for the expenses of fitting up the premises under the contracts made in its name, and no actual conveyance to the complainant, either of the lease or fixtures, has been made. The time fixed for the payment of

the mortgage having arrived, the situation is one where the entire equities between the parties should be settled, and the complainant, asking the equitable remedy of specific performance, should be required, on his part, to satisfy the equities which have arisen in defendant's favor on the entire transaction. This was the view of complainant on filing the bill, which was for the double purpose of specific performance of the agreement for the lease and settling the amount due on the mortgage in a single suit. The bill asks an accounting of the amount due on the mortgage, and offers to pay the amount found due upon the performance of the agreement to execute and deliver the same. The defendant accepted the issues thus tendered, and the cause has proceeded to hearing upon both questions—that of execution of the lease and the settlement of the amount due on the mortgage. Under these circumstances, I do not think that the complainant should now be allowed to withdraw the tender or offer in his bill and to ask that he be allowed to have the lease executed without payment of the amount due on the mortgage.

*Fourth.* Defendant, on the cross-bill, is entitled to an injunction restraining the breach of the covenant relating to the sale on the premises of goods other than those supplied by defendant.

The form of decree will be settled on notice, unless counsel agree upon the form.

### FURTHER MEMORANDUM AS TO FORM OF LEASE.

*First.* The lease should be for the full term of the lease from the Bernard estate to the company. Leases to a subtenant for the full term create the relation of landlord and tenant, as between the original lessee and the sublessee, if they so intend. *Stewart v. Long Island Railroad Co., 102 N. Y. 608*, and cases cited (at *p. 609*). The effect as between the original landlord and the sublessee is not before me for decision, and upon further consideration I conclude that no restriction of the full term should be made.

*Second.* In the clause as to the option, the lease should follow the terms of the original lease. Whether, as between the original

lessor and the company, the sublease for the full term operates as an assignment of the right or option to renew, is a question not now to be decided, and I do not consider that I have the right on a bill for specific performance to deviate from the form of contract which parties have agreed upon.

*Third.* Neither party is entitled to costs as against the other. Although complainant was obliged to file his bill in order to obtain specific performance, he claimed performance on terms in the lease to which it was decided he was not entitled. On the other hand, defendant originally, and up to the time of filing answer, refused any specific performance, and at the hearing insisted on terms in the lease to which it was not entitled. So far, therefore, as the case is to be treated as one of specific performance, both sides were in fault, and the general rule in such cases is that neither party is entitled to costs. *2 Dan. Ch. Pr.* §§ *1400, 1401.* So far as the bill was a bill to settle the amount due on the mortgage and to redeem, the mortgagee would be entitled to the costs of the suit so far as they related to the mortgage claim, and if these could well be separated from the other costs of the suit they might be allowed. But both questions of specific performance and mortgage indebtedness were tried together, and it is impracticable to separate the costs. On the whole case, it is most equitable that neither side pay costs.

*Messrs. Riker & Riker,* for the appellant.

*Mr. Scott German* and *Mr. Francis Child,* for the respondent.

The opinion of the court was delivered by

.GUMMERE, CHIEF-JUSTICE.

By a formal agreement under seal, entered into by the parties to this litigation on May 20th, 1902, the respondent (a brewing company) contracted to lease to the appellant certain premises in the city of Newark, and to expend the sum of $2,500—and $1,000 more, if necessary—in fitting them up for use as a beer saloon by him. He agreed, on his part, among other things, to

use and sell only the goods manufactured and sold by the respondent company, or imported from outside the United States, and also to give to it a chattel mortgage upon the goods and fixtures contained in the saloon for such sums as the respondent might invest in the premises or loan or advance to him. The fitting up of the premises in the manner provided by the agreement having been completed in the latter part of September, the appellant entered into possession, although no lease had been executed by the respondent. At the same time he gave to the respondent a chattel mortgage upon the stock and fixtures of the saloon. Some two or three months later a lease was tendered him by the respondent, containing a prohibition against his subletting the premises. He declined to accept the lease with this provision in it, for the reason that his contract with the company contained no such prohibition. Some months later he applied to the president of the respondent company to be permitted to sell beer brewed in Milwaukee, Wisconsin, and claims that unrestricted permission to do so was granted to him by that officer. This the respondent denies, but admits in its answer that it granted permission to him to sell from two to four half barrels of that product, upon the express understanding that he would discontinue its sale upon notice from the respondent company to that effect. About a year after the appellant took possession of the premises, a dispute having in the meantime arisen between the parties as to his right to sell the Milwaukee beer, and also as to the amount due on the chattel mortgage, the bill in this case was filed. It has a twofold aspect. By it the appellant seeks—*first,* to compel the respondent company to execute and deliver to him a written lease for the premises, in compliance with the provisions of the contract of May 20th, 1902, as modified by the alleged agreement made subsequently by the president of the respondent company with relation to the sale of Milwaukee beer in unrestricted quantities; and *second,* to obtain an accounting of the amount due upon the chattel mortgage, and a decree of redemption upon payment of the amount found to be due upon such accounting.

By the decree of the court of chancery it was adjudged—*first,* that the appellant was entitled to have a written lease executed

and delivered to him by the respondent, and that the lease should contain the provisions of the contract of May 20th, 1902, with the restricted modification relating to the sale of Milwaukee beer, which was admitted by the respondent to have been made by it, but not with the unrestricted modification claimed by the appellant to have been made by the respondent company's president; *second,* that the amount due upon the chattel mortgage was the sum of $6,691.55, and that the appellant was entitled to redeem the property covered by it upon payment of this amount. The appellant appeals from both branches of the decree, contending that the amount found due upon the chattel mortgage is excessive, and that he is entitled to have the lease contain a provision permitting the unrestricted sale of Milwaukee beer.

The opinion filed in the court of chancery by the learned vice-chancellor who heard the cause contains a full statement of the facts out of which the controversy arose between the parties with relation to the amount due upon the chattel mortgage, and also the reasons upon which his finding rests that the amount due was the sum above stated. A restatement of either of them by this court is not necessary. It is enough to say that this portion of the decree is affirmed on that opinion.

The vice-chancellor placed his conclusion that the appellant is not entitled to have a provision permitting him to sell Milwaukee beer in unrestricted quantities, upon two grounds—*first,* that the agreement for the sale of liquors contained in the contract of May 20th, 1902, is a restriction of the use of lands, an equity attached to them by the lessor, and that a subsequent parol agreement altering it, if made, is void under the statute of frauds; and *second,* that it was not shown that the president of the company had authority to modify the contract in the manner claimed by the appellant.

We concur in the view of the vice-chancellor that the agreement of the president of the company to modify the provision in the contract relating to the sale of liquor (if such agreement was made by him) did not bind the respondent. No attempt was made to show any express authority conferred upon him

for this purpose by the board of directors, and he had no power *virtute officii* to alter the provisions of a formal agreement under seal entered into by the corporation itself. The act of the president of a corporation, unless it is shown to pertain to his official duty, or to be within the scope of his employment, cannot be regarded as the act of the corporation, and is not binding upon it. *Titus* v. *Cairo and Fulton Railroad Co., 37 N. J. Law (8 Vr.) 98.* His powers over its business and property are strictly the powers of an agent, delegated to him by the directors, who are the managers of the corporation, and the persons in whom the control of its business and property is vested. He may, without any special authority from the board of directors, perform all acts of an ordinary nature which by usage or necessity are incident to his office, and may bind the corporation by contracts in matters arising in the usual course of business. To this extent, by virtue of his office, he is the agent of the corporation, but beyond this his official position gives him no more control over its property, funds or business, than any other director. *Stokes* v. *New Jersey Pottery Co., 46 N. J. Law (17 Vr.) 237.* Any act done by him which is outside the scope of the powers which inhere in his office will not bind the corporation, unless it is shown that authority was conferred upon him for the purpose by the directors, either expressly or by their consent and acquiescence in permitting him to assume the direction and control of the business of the company. *Stokes* v. *New Jersey Pottery Co., supra.* As has already been said, no express power was shown to have been conferred upon the president of the respondent company to alter its formal agreement, executed by it under its corporate seal, and it cannot be inferred from the testimony that such power had been conferred upon him inferentially, by his assumption of the direction and control of the business of the corporation, with the consent and acquiescence of the directors.

Reaching the conclusion that the agreement of the respondent company's president to modify the provision of the contract of May 20th, 1902, relating to the sale of liquors (if such an agreement was made by him) did not bind the respondent, we find it

unnecessary to consider the interesting question whether that provision of the contract is a restriction of the use of lands, and, for this reason, within the statute of frauds.

The decree appealed from must be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—12.

*For reversal*—None.