EMIL SATTLER, RESPONDENT, v. HOWE RUBBER CORPO-
RATION, APPELLANT.

Argued November 29, 1922—Decided June 18, 1923.

1. The president of a corporation has no implied authority, by
   virtue of his office, to make a contract with a third person, by
   the terms of which the latter is to receive a salary, to be paid
   out of the funds of the corporation, without rendering any ser-
   vice as a consideration for such payment.
2. The mere assertion of an assumed agent that he is authorized to
   act in a given matter, and in a specified manner, by the prin-
   cipal he claims to represent, is no evidence of the existence of the
   agency, or of his right to represent his alleged principal.
3. To constitute an equitable estoppel, it must appear that a party
   in good faith relied upon the representation or conduct of the
   other party, and thereby was led into such a course of conduct
   that he will be substantially prejudiced if the other be permitted
   to repudiate his former action or representation.

On appeal from the Supreme Court.

For the appellant, *Borden D. Whiting* and *John R. Hardin*.

For the respondent, *Sidney W. Eldridge*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This was an action on a con-
tract alleged to have been made on or about April 15th,
1921, by the respondent, who was plaintiff below, with the
defendant company, acting through its president, by the
terms of which the plaintiff, who was sales manager of the
corporation, agreed to resign his position and to transfer to
the defendant corporation his holdings of stock therein, the
consideration for his agreement being the payment to him of
the moneys expended by him in the purchase of the stock and
the continuation of his salary from the date of his resigna-
tion to the 1st of January then following. Pursuant to this
alleged agreement, the plaintiff retired from his position as
sales manager on the 21st of April, and on the 1st day of

June thereafter accepted employment with one of the defendant company's competitors, and thereupon the defendant refused to make any further payments of salary to him. The action was brought to recover the salary due under the alleged contract and accruing from June 1st, 1921, to January 1st, 1922. The trial resulted in a verdict in favor of the plaintiff for the full amount of his claim, and from the judgment entered thereon the defendant has appealed, and now contends, before us, that there was error in the refusal of the trial court to direct a nonsuit in its favor.

Considering the proofs in the aspect most favorable to the plaintiff, the following situation is disclosed: On the 15th of April, 1921, the plaintiff and a Mr. Tenney, the president of the defendant corporation, had an interview, during the course of which Tenney, after advising the plaintiff that there was dissatisfaction among the directors with relation to the manner in which his services were rendered, and that it had been decided that those services should be discontinued and a new sales manager employed, informed him that, if he would resign, the company would take over all of his stock holdings at the prices he had paid for them, and would continue his salary for the balance of the year, stating that he (Tenney) had authority to make such an arrangement. The plaintiff accepted this proposition, and at the next meeting of the board of directors, which was held on the 19th of April, tendered his resignation. The directors, after receiving it, unanimously approved the following motion: "Moved, that the resignation be accepted with regret, and that Mr. Sattler be continued as a member of the company at his present salary for the balance of the fiscal year, unless he should sooner enter business elsewhere, in which case the matter of further compensation would be subject to adjustment by this company." A second motion was then put and unanimously carried, which provided for the purchase of the plaintiff's stock holdings at the price agreed upon between the plaintiff and Mr. Tenney on the 15th of April. On the following day the plaintiff was furnished with a copy of each of these resolutions, and immediately protested to

Mr. Tenney that the first of them was not in accordance with the agreement which had previously been made between them, because it made the payment of future salary conditional upon his refraining from entering into other business relations; and Tenney then told him that he would have the matter corrected at the next meeting of the board. Eight days later the plaintiff transferred his stock holdings to the corporation for the price agreed upon and accepted payment therefor. On the 1st day of June thereafter the plaintiff entered into the service of the Eckrode Rubber Company, a competitor of the defendant, and, this fact becoming known to the president, it was reported to the board of directors at their regular meeting on June 6th (which was the first meeting held after April 19th), and it was then moved and seconded that further compensation to the plaintiff be discontinued as of June 1st, 1921, and this motion was unanimously carried, and plaintiff was advised of this corporate action on the following day.

.From this recital of facts, it is clear that the right of plaintiff to recover the moneys for which this action was brought must rest upon one of three propositions—(1) that the president of the defendant company, by virtue of his office, had power to enter into the contract of April 15th, or (2) that he had been previously authorized by the corporation to enter into it, or (3) that, although made by him without authority, the agreement had been subsequently acquiesced in or ratified by the company.

Taking up the first proposition: We have no doubt that the president of a corporation has no implied authority, by virtue of his office, to make a contract with a third person, by the terms of which the latter is to receive a salary, to be paid out of the funds of the corporation, without rendering any service as a consideration for such payment. As was said by this court in *Mausert* v. *Feigenspan*, 68 *N. J. Eq.* 671, 679: "His powers [president] over the business and property are strictly those of an agent, delegated to him by the board of directors, who are the managers of the corporation and the

persons in whom the control of its business and property is vested. He may, without any special authority from the board of directors, * * * bind the corporation by contracts in matters arising in the usual course of business, * * * but beyond this his official position gives him no more control over its property, funds or business than any other director."

(2) There is no proof in the case to justify the conclusion that Tenney, in entering into the contract of April 15th with the plaintiff, was acting under authority previously conferred upon him by the board of directors. It is true that he then stated to the plaintiff that he had such authority, but no attempt was made by the plaintiff to prove the truth of this statement; for, of course, the mere assertion of an assumed agent that he is authorized to act in a given matter, and in a specified manner, by the principal he claims to represent is no evidence at all of the existence of the agency, or of his right to represent his alleged principal. This proposition is so elementary as to require no citation of authority for its support.

This leaves for consideration the third proposition above pointed out, namely, was there anything in the action of the board of directors, after it was informed of the action of the company's president in entering into an unauthorized contract with the plaintiff, which will support the conclusion that, with knowledge of this unauthorized action, they acquiesced in it or ratified it? Certainly, the first motion adopted by the board of directors almost immediately after learning what had been done by the president can hardly be considered as either an acquiescence in, or a ratification of, his action; for, by its very language, it was an express repudiation of that action, so far as it unconditionally bound the company to pay the future salary. It is contended, however, that by accepting a transfer of the plaintiff's stock (that being one of the provisions of the contract of April 15th), they ratified the contract *in toto*. There would be some force in this contention if the first motion adopted had not been an express repu-

diation of the provision thereof upon which the plaintiff now relies, and a prompt communication of that repudiation to him some days before he transferred his stock to the company. In this situation, the mere fact that the corporation accepted the transfer of the plaintiff's stock holdings cannot be considered as constituting a withdrawal by implication from the position which it then had taken; that is to say, it was neither an acquiescence in, or a ratification of, the president's action of April 15th.

It has been suggested that the acceptance of the stock transfer operated as an estoppel against the right of the defendant to deny the validity of the action of its president; but this suggestion, we think, is without merit. To constitute an equitable estoppel, it must appear that a party in good faith relied upon the representation or conduct of the other party, and thereby was led into such a course of conduct that he will be substantially prejudiced if the other be permitted to repudiate his former action or representation. The present case discloses no such situation. It cannot be contended that the board of directors made any representation other than that contained in the motions adopted by it on April 21st. or conducted itself in such a way as to induce the plaintiff to change his position with relation to the transfer of his stock. As has already been pointed out, he made that transfer with full knowledge of the position that the board had taken with relation to the payment of future salary, and, apparently, solely because of his reliance upon the promise of the president to induce the board to change its position (which promise the president was manifestly unable to perform), and not because of any act of the board indicating a purpose on its part to make any such change.

We conclude therefore that, on the proofs submitted, viewed in the light most favorable to the plaintiff's case, nothing appears which affords a legal support for his claim against the defendant company; and, this being so, the motion to direct a nonsuit in favor of the defendant should have been granted.

The judgment under review will be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Trenchard, Bergen, Minturn, Kalisch, Black, Katzenbach, White, JJ.  9.