## H. D. TIMMONS & Co. v. JOHN S. CASEY.

Delivered October 15, 1898.

**1. Practice—Cross-Examination—Memorandum.**

An attorney can not be compelled to deliver to the opposing counsel a memorandum used by him in examining a witness, where it was not used by the witness, and the attorney has offered to put it in evidence, or allow the opposing counsel to do so, and asked of the witness no questions in regard to it.

**2. Mechanic's Lien—Joint Contract—Enforcement.**

Persons furnishing materials for the erection of a residence, barn, and other buildings are not entitled to have the contract for the erection of the latter buildings separated from the residence contract, and their lien enforced thereon, where the portion of the material which went into the former contract is unascertainable, the owner has paid nothing to the contractor since the notice of indebtedness served upon him, and owes him nothing because of his abandonment of the work, considering the entire work to be done as provided for in the two contracts, which were considered by the parties as in effect but one contract, and were so treated in the pleadings of the person seeking to establish the lien.

APPEAL from Hill. Tried below before Hon. J. M. HALL.

*McKinnon & Carlton,* for appellants.

*W. E. Spell,* for appellee.

FINLEY, CHIEF JUSTICE.—This is a suit by appellants against the appellee to establish and foreclose a lumber dealer's lien on a certain lot and improvements belonging to appellee, described in appellants' petition. The cause was tried at the fall term, 1897, in the District Court of Hill County, before the Hon. J. M. Hall, judge, without a jury, and the court rendered a judgment on the law and facts in favor of the appellee.

The plaintiffs, H. D. Timmons & Co., have appealed from the judgment rendered. The trial judge filed the following conclusions: "The

court finds as a fact that the defendant John S. Casey entered into a written contract with one John Bolinger, on the 24th day of September, A. D. 1895, to erect for him a dwelling house on lot No. ——, in the city of Hillsboro, Texas; that the said John Bolinger was to furnish all material and perform all the work sufficient to complete and finish the said building, and that said Casey was to pay him therefor the sum of $3870. I further find that on November 19, 1895, said John Bolinger quit said work and abandoned his contract, and at that time said dwelling-house had fairly begun; I find that up to said November 19, 1895, that the said Casey had paid said Bolinger, under said contract for material furnished and work performed, $2740.20; and at the time he left, to wit, November 19, 1895, the said Casey was not due the said John Bolinger, the contractor, any sum under the contract, and I find that on November 17, 1895, the plaintiff herein served notice on said Casey, accompanied by bill of particulars of the amount of Bolinger's indebtedness to plaintiff, and that said Casey did not, after receiving said notice of bill of particulars, pay to Bolinger any sum of money under the contract, and never did thereafter pay to said Bolinger any sum of money, and neither did said Bolinger earn any. I find that on November 23, 1895, after Bolinger had quit the work and threw up his contract, that E. H. Silven, an architect in the employ of the defendant, took charge of the work under the written contract and under the directions of the defendant and the sureties of the contractor's building bond, all of which was in accordance with the contract, and completed the work according to the contract as entered into between said John Bolinger and John S. Casey, the defendant. I find that the said dwelling-house cost the defendant $6000, and I further find that after the completion of the said dwelling-house the said Casey was not due Bolinger anything under the contract. I further find that on the 24th day of October, 1895, the defendant herein entered into a contract with one John Bolinger to erect for him, Casey, and finish and deliver in a good, workmanlike manner, the brick work, carpenter work, tin and galvanized work, glazing, etc., and all work required in the erection of a one and one-half story barn and coalhouse, two water closets, cesspool, and all fences required to fence the entire lot No. —— of the Craig addition to the city of Hillsboro; also to put down cement walks in accordance with the said contract. I further find that the said Casey was to pay him, Bolinger, for the above named work, completed and delivered, the sum of $1161.40; I find that on the 19th day of November, 1895, said Bolinger quit said work under this contract and abandoned the same, and that the erection of said barn had fairly begun, and that the other improvements mentioned in said contract had not been commenced. I find that it would take $1500 to complete the improvements mentioned in said contract of date October 24, 1895, and I find at the time said Bolinger quit work that the value of the work done and material furnished on said barn was $700, and it would have required $300 more to have completed the barn alone, and would have required $500 to have completed the other im-

provements mentioned in said contract, dated October 24, 1895; I further find the value of the material furnished by Bolinger to build the barn, up to the time he quit the work, to be the sum of $400. I further find that after the said Bolinger threw up the contract and quit the work, the architect took charge of the same under the terms of this contract and completed the improvements named in said contract in accordance with the agreements and stipulations mentioned in said contracts. I find that the improvements mentioned in the said contracts completed in accordance with the terms of the said contracts, cost the defendant the sum of $8030.04 in excess of the amount named in the contracts, for which Bolinger was to erect, finish, and complete the said improvements; that after completing the improvements mentioned in both of said contracts the said Casey was not indebted to Bolinger in any sum, but that said Casey had expended $2999.04 in excess of the sum named in the contracts, and that he, Casey, had instituted a suit on the builder's bond for the sum of $1000, the amount of said bond, in Dallas County, Texas.

"Conclusions of Law.—I find as a conclusion of law, that as Casey was due the contractor Bolinger nothing at the date Bolinger quit the work, and that at the date plaintiff served the defendant with notice of Bolinger's indebtedness to them, attaching thereto a bill of particulars, that said Casey was not indebted to the said Bolinger, and did not thereafter pay to said Bolinger any sum of money under the contracts, and that Bolinger having contracted to furnish all material and all work necessary to complete the improvements mentioned in said contracts, that the said Casey would not be liable to the plaintiff for the material furnished, unless at the time Bolinger quit the work and at the time defendant was served with notice of plaintiff's claim against Bolinger, that he was indebted to Bolinger, and paid him money after the notice was so served upon him. The facts show that after said improvements were completed in accordance with the contracts, that the defendant was not due Bolinger any sum of money on the contracts; therefore the plaintiffs could not recover from the defendant Casey for an account made with the contractor Bolinger, unless after the said work was completed, in accordance with the contract, the defendant Casey was due the said Bolinger something under the contracts for the erection and completion of said improvements.

"I conclude as a matter of law that the plaintiff had taken proper steps to fix a lien against the lot and improvements, but that said lien never attached, because as a matter of fact the defendant was never at any time after the service of a notice of plaintiff's claim against the contractor, or at the time notice of plaintiff's claim was served, indebted tc said contractor in any sum, and never paid out in any manner any sum of money which was due the contractor."

*Opinion.*—1. The first assignment of error is directed at the refusal of the court to require the attorney of appellee to deliver over to the attorneys of appellant a statement or memoranda of expenditures pre-

pared by the architect, showing the money expended in completing the work after it was abandoned by the contractor. The contention is that this paper was used by appellee while being examined by his attorney to refresh his memory, and that opposing counsel had the right to cross-examine him upon this paper. The bill of exceptions, in the explanation made by the judge, states that the paper was a private memorandum used by counsel in examining the witness; that it was not used by the witness, and that appellee's counsel offered to put it in evidence or allow opposing counsel to do so, but the latter objected to this. It seems that this paper was used by appellee's attorney upon the trial simply as a guide to him in conducting the examination of the witness, was not used by the witness to refresh his memory, and it does not appear that the witness was asked any questions in regard to the paper by appellee's attorney. The architect who made the memorandum was examined as a witness as to the facts, and the appellee appears also to have been thoroughly cross-examined as to the subject matter to which the paper related. It does not appear when this memorandum was prepared, and we infer that the offer to allow the paper to go in evidence was made by appellee's counsel in response to the request of opposing counsel for the production of the paper. Under these circumstances, we are of the opinion that there was no error in declining to force counsel for appellee to deliver over the paper to opposing counsel. We are cited to no authority supporting such a proposition, and we know of no principle upon which it can be properly based.

2. Under the second and third assignments of error, which attack the conclusions of the court, this proposition is urged: "The contract for building the barn, fencing, etc., being a separate contract, and Casey being indebted to Bolinger on this contract at the time he abandoned the contract in a sum more than sufficient to complete the same, and appellants having fixed their lien, it was error not to find for appellants the difference between the amount Casey owed Bolinger and what was necessary to complete this contract."

Appellants' pleadings seek to establish their lien upon the entire lot, residence building, and all the improvements on the lot. They allege that the material was furnished for the construction of the residence building, barn, and other improvements, and do not specify any particular portion as being furnished to put into the constructions provided for by the second contract. The appellants, the contractor, the appellee, and architect all treated the two contracts as in effect one contract for constructing all the improvements upon the lot. What part of appellants' material went into the barn and other improvements covered by the second contract is not made to appear. It is manifest that appellee owed the contractor nothing at the time he abandoned the work, considering the entire work to be done as provided for in the two contracts. It may be that if the improvements contracted for under the second contract, the barn, etc., were to be separated from the other work, appellee would be found to be owing the contractor some amount upon that work.

He probably had not paid the value of the material and work upon these particular improvements, but he had fully paid all that was due upon the work as a whole; and it also appears that he had to expend more to complete the work upon these particular improvements, according to the contract, than would have been coming to the contractor upon their completion by the terms of the contract. Under this state of case, appellants were not entitled to have the barn, servants' house, etc., provided for in the second contract, separated from the residence contract and a lien enforced thereon in their favor for the value of the material furnished by them. Had appellants furnished the material specifically for the constructions provided for in the second contract, and such material had been put into them, and appellant's pleadings treated them as separate from the residence contract, the contention made might obtain. That character of case is not, however, presented, and we only desire to consider and decide the case as made by the record before us.

3. It is next urged that the evidence did not justify the conclusion that appellee had paid out more money for the completion of the dwelling-house than the amount for which it was contracted to be built by Bolinger. This contention is not sustained by the record. The evidence abundantly supports the conclusion complained of; indeed, no other conclusion could reasonably be reached from the evidence.

No other reasons are presented for a reversal of the judgment, and it will be affirmed.

*Affirmed.*