**Peter BOVA (Plaintiff), Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY, a corporation (Defendant), Appellant.**

No. 29966.

St. Louis Court of Appeals.

Missouri.

July 8, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 3, 1958.

Robert E. Wieland, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for appellant.

Mills & Palumbo, Myron D. Mills, St. Louis, for respondent.

ANDERSON, Judge.

This is an action by plaintiff, Peter Bova, against defendant, St. Louis Public Service Company, for personal injuries resulting from an assault on plaintiff by one of defendant's employees. The trial resulted in a verdict for $2,500 actual damages and $750 punitive damages. From the judgment on said verdict, defendant has appealed.

The assault occurred about midnight on April 20, 1955. At the time, plaintiff was on his way home from a ball game. Just prior to the assault plaintiff was proceeding west in his automobile on Page Avenue.

When he reached the intersection of Page Avenue and Kingshighway he overtook a bus of defendant being operated by its employee, James A. Bethel. The bus was in the curb lane and plaintiff was traveling in the second lane. Prior to reaching the intersection the traffic signal changed from red to green. Plaintiff proceeded toward the intersection and as he passed the bus defendant's operator turned the bus into the second lane. There was a slight collision between plaintiff's car and the bus. The bus continued west on Page Avenue, plaintiff following it. At the next intersection plaintiff drew alongside the bus and inquired of the operator if he knew he had struck the car. The operator, although he looked directly at plaintiff, made no response to the inquiry. The same thing occurred at the next intersection. At Union Avenue the bus stopped at the curb on the west side of the intersection at the regular bus stop. Plaintiff then pulled in front of the bus and stopped his car at an angle with the curb, thus preventing the bus from proceeding. Plaintiff then got out of his car and boarded the bus. Plaintiff again asked the bus driver if he realized he had struck the car. Plaintiff also stated that he wanted the operator's name and identification number. Plaintiff made this request about three times but was unsuccessful in obtaining the information. During this time the bus driver was insisting that plaintiff get his car out of the way so that he could get his passengers to their destination. The bus driver told plaintiff to either pay his fare or get off the bus. Plaintiff, although he did not intend to remain on the bus, wanted to find out if any of the passengers had witnessed the accident. He handed the operator either a quarter or half dollar. The operator did not give him change, and plaintiff did not deposit the fare in the fare box. Plaintiff spoke to some of the passengers but did not obtain information from any of them. He did not get the names of any of the passengers. He walked back and had further conversation with

the operator. He again asked the operator for his name and identification number. Plaintiff testified: "There were words followed which I don't remember, and he rose out of his seat and lunged at me. * * His shoulder struck me right in the center of my chest. * * * I was practically knocked out of the bus. * * * Well, I was knocked off balance. * * * With the lunge, I went out the door * * * and he followed me, come right out after me, out the door. * * * that is when the lights went out. That is when he plowed into me. * * * The first blow was right on my face, right on my nose and mouth. Q. And approximately how many times were you struck, if you know? A. I am sure of three times while I was, * * * before I went down on my one knee. * * * Q. And were you struck after that? A. Yes, while I was on my one knee, he struck me * * * at least twice."

On cross-examination plaintiff admitted that when he first got on the bus, and about four or five minutes before the attack, he called the operator a "lying bastard."

Plaintiff sustained serious injuries as a result of the attack.

Ernest Farris, a witness for the defendant, testified that the bus driver asked plaintiff to either pay his fare or get off the bus; that the bus driver told plaintiff he had to get to Wellston; that he had some passengers who "went out into the county"; that his schedule was being delayed; and that he was anxious to get to Wellston.

The operator testified he was sitting in his seat when plaintiff boarded the bus. He stated that he asked plaintiff if he would please leave; that "we were going, that we wanted to get to Wellston." He further testified that he let the bus roll backward and started around plaintiff's car, then stopped and told plaintiff that he would have to pay a fare or get off the bus. He stated that plaintiff gave him a fifty cent piece, and that he gave plaintiff five dimes in change. Then, as he started around plaintiff's car plaintiff said: "Wait a minute, I am not going after all." The witness further testified: "As I stopped the bus and opened the door he turned in the doorwell, facing me, and he said 'You are a smart bastard,' and at the time stuck his hand in his right pocket. * * I immediately pulled the emergency brake and lunged at him. * * * I struck him with my shoulder and he fell backward out the door. * * * I had the intent to defend myself. I was of the opinion that he was going to bring out a weapon of some sort." The witness admitted striking plaintiff in the face approximately four times, knocking him down. On cross-examination the witness testified that his duties were to drive the bus, maintain a schedule, pick up passengers and collect fares; that when plaintiff boarded the bus he was delaying his schedule and that he was concerned about that.

Appellant contends that the court erred in not sustaining its motion for a directed verdict because there was no substantial evidence to show that the assault by the operator of the bus upon plaintiff was within the scope of his employment or intended to further the business of appellant.

The opinion most frequently cited which announces the rules to be applied in determining whether a case is made for the jury in cases of this character is Haehl v. Wabash R. Co., 119 Mo. 325, 24 S.W. 737. It is there said: (24 S.W. loc.cit. 740)

"The principle of respondeat superior applies only when what is complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business, and carrying out his purposes He is then responsible, because the thing complained of, although done through the agency of another, was

done by himself; and it matters not in such case whether the injury with which it is sought to charge him is the result of negligence, unskillful or of wrongful conduct, for he must choose fit agents for the transaction of his business. But if his business is done, or is taking care of itself, and his servant, not being engaged in it, nor concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether provoked or unprovoked, commits an assault upon another, when that has and can have no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed, then the wrong is the purely personal wrong of the servant, for which he, and he alone, is responsible."

In Maniaci v. Interurban Express Co., 266 Mo. 633, 182 S.W. 981, the Supreme Court quotes with approval from Mechem on Agency, as follows: (182 S.W. 981 loc. cit. 985)

"* * * in general terms, it may be said that an act is within the course of the employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account."

■ Measured by the principles above mentioned, we believe that the question as to whether Bethel was acting in the course of his employment and within

its scope in making the assault upon plaintiff was for the jury. Bethel was at the time in charge of and operating the bus. His duties were to operate the bus, collect fares, take on and discharge passengers, and maintain a schedule. By giving him such duties defendant must be held to have invested him with authority to make decisions for it, when necessary, in connection with the performance of those duties. When made, the operator's judgment becomes the judgment of defendant. By executing that judgment in an unlawful manner, the defendant is liable.

■ Bethel was concerned about the schedule at the time. Plaintiff boarded the bus for the purpose of securing the operator's name and identification number, and to secure names of witnesses among the passengers. Plaintiff, according to defendant's witnesses, was very profane in his language and gave the appearance of being intoxicated, and in addition was delaying the schedule and making himself obnoxious to the passengers. A jury could reasonably find that Bethel's act in assaulting plaintiff was intended by Bethel, and was, in fact, in furtherance of defendant's business and not to vindicate his own outraged personal feelings. The court properly denied defendant's request for a directed verdict.

Appellant next complains of Instruction No. 1, which was given at plaintiff's request. Said instruction reads as follows:

"The court instructs the jury that if you find and believe from the evidence that on or about April 20, 1955, Peter Bova believed that his automobile had been struck by defendant's motorbus at or near the intersection of Page and Kingshighway Blvd., and if you further find that at or near the intersection of Page and Union Blvd. Peter Bova parked his automobile in front of said motorbus so as to block the forward path thereof and thereafter boarded the said motorbus and asked the driver of said motor-

bus for his name and identification of the said bus and stated that he intended to make a claim against the defendant company for any damage to his automobile, and if you further find that the bus driver asked Peter Bova to get off the said bus and to move his automobile out of the path of the bus so that the schedule of said bus could be maintained, and if you further find that the said conversation between the bus driver and Peter Bova related to the defendant's business, and that the bus driver was acting in the course and scope of his employment, and if you further find that at said time and place the bus driver did wantonly and maliciously assault Peter Bova by violently pushing him and striking him in the chest and face and thereby causing him to be injured, then your verdict must be in favor of Peter Bova and against the defendant."

■ Appellant's complaint against the instruction is that it omitted an essential element of plaintiff's case, namely, that the assault occurred while the bus operator was acting within the scope of his authority. We find no merit to the point raised. The instruction requires a finding that the assault occurred "at said time and place," that is, at the time and place the conversation heretofore mentioned was had between the operator (acting within the scope of his authority) and plaintiff. The jury would have understood that they were required to find that the assault was a part of the transaction theretofore mentioned and within the scope of the operator's authority. But if there was any ambiguity in the submission of Instruction No. 1, it was made clear by defendant's Instruction No. 6.

By Instruction No. 6 the jury were told:

"The court instructs the jury that an employer is not responsible for the acts of an agent or servant done outside the scope of his authority and course of employment.

"* * * if you * * * find that the fight had no connection with the duties of James Bethel, as a bus operator for the defendant, St. Louis Public Service Company, and was not intended to promote or further defendant St. Louis Public Service Company's business and was personal between the bus operator, James Bethel, and plaintiff, Peter Bova, then your verdict should be against the plaintiff and in favor of the defendant, St. Louis Public Service Company."

■ The foregoing instruction, in our judgment, clarified whatever ambiguity might be deemed to exist in Instruction No. 1. Instructions must be read together, and when they contain a complete exposition of the law and cover every phase of the case when so read and construed, the jury's verdict will be allowed, even though the verdict-directing instruction may be open to criticism for ambiguity or indefiniteness. Higgins v. Terminal R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380; Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907.

Dr. Eugene Hall testified for plaintiff concerning plaintiff's injuries and the treatment he administered. To refresh his memory he used office records he had made at the times he treated plaintiff. On cross-examination, all of the doctor's records and papers were handed to defendant's counsel. Among those papers were some letters written by Dr. Hall to plaintiff's attorney. It does not appear, nor is it contended, that Dr. Hall used any of these letters to refresh his recollection while testifying. After defendant's counsel was handed Dr. Hall's file, the following occurred:

"Q. Did you send any letters to Mr. Palumbo in regard to your findings regarding Mr. Bova? A. Yes, sir.

"Q. Are they in this? A. Yes, sir. (Referring to the records and papers handed to defendant's counsel.)

"Q. Or copies of them? A. Yes, sir.

"Q. All of this pertains to your correspondence regarding Mr. Bova? A. Yes, sir.

"Q. I will give you back your cards.

"Mr. Mills: I am going to object, your Honor, I think at this time, to him going through the complete file, particularly with reference to any correspondence, I think that is improper.

"The Court: Sustained.

\* \* \* \* \* \*

"Mr. Wieland: If it please the Court, I think I have a right to examine his records because I don't know whether there is any reading matter in them will be contradictory to the evidence he has on his cards. This contains correspondence that he wrote to the plaintiff's attorney.

"The Court: You are going on a fishing expedition. \* \* \* Objection sustained to letters to counsel of plaintiff."

■ Appellant contends the court erred in not permitting defendant's counsel the right to examine the above mentioned letters. There is no merit to the contention made. The letters not having been used by the witness to refresh his recollection, there was no error in the court's ruling. Williams v. Duluth St. Ry. Co., 169 Wis. 261, 171 N.W. 939; Timmons v. Casey, 19 Tex.Civ.App. 476, 47 S.W. 805; United States v. Goldman, 2 Cir., 118 F.2d 310; Little v. United States, 8 Cir., 93 F.2d 401; Chandler v. State, 60 Tex.Cr.R. 329, 131 S.W. 598; 98 C.J.S. Witnesses § 362, p. 101; 70 C.J., Witnesses, § 769, p. 598.

Defendant's remaining assignment is that the court erred in overruling an objection to improper argument by plaintiff's counsel during his closing argument.

It appears that the argument was in answer to a statement made by defendant's counsel during his argument, to the effect that defendant's business would not be promoted by the fight. The argument complained of appears in the record as follows:

"I hate to shout, but I am frankly exasperated. How can the fight promote the interests of Public Service Company? Well, if everybody out there that dares to have the nerve to make a claim against them is going to get the living daylights beat out of them, then there wouldn't be as many claims, I will say that to Mr. Wieland."

The objection made was that "the inference that fights arise out of claims is wholly outside the scope of the evidence." The court overruled the objection. In the motion for new trial the same objection was made and, in addition, it was alleged that the argument was designed to inflame the passion and prejudice of the jury. The latter objection is urged here.

■ Plaintiff's argument was not a sound reply to the statement made by defendant's counsel, and perhaps defendant's objection should have been sustained. However, we do not believe that it was of such poisonous character as to warrant a reversal of the judgment and a remand of the cause. The granting or refusing of a new trial for improper argument rests within the discretion of the trial court, whose ruling will not be disturbed short of an abuse of discretion. Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S.W.2d 54. In the case at bar the matter was presented to the trial court in the motion for new trial. The trial court overruled the motion. We do not believe it abused its discretion by so doing.

Finding no reversible error in the record, the judgment is affirmed.

RUDDY, P. J., and WOLFE, J., concur.

On Motion for Rehearing

ANDERSON, Judge.

In appellant's motion for rehearing it is urged that we overlooked certain testimony brought out on plaintiff's cross-examination which it is claimed conclusively shows that the blows struck by the operator of the bus were not in furtherance of the master's business. The interrogation related to testimony given in a deposition, wherein plaintiff testified that after he was nudged by the operator he turned around, got off the bus and started to walk toward his car, at which time he was struck in the face by the operator. From this testimony appellant argues that a fight on the sidewalk could have no relation to the operator's duty of maintaining his schedule.

■ In considering plaintiff's evidence we are not confined to isolated portions thereof, which, standing alone, might be considered favorable to defendant. Our duty is to consider all the evidence in its most favorable aspect to plaintiff's case. On redirect examination plaintiff testified:

"As he rose out of his seat, he came out of his seat with speed that his shoulder hit me and knocked me off balance backward.

* * * * * *

"Q. During the time that you got out of the bus, was there any lapse of time as far as seconds or minutes between the time of the lunge and the time you were struck these blows on your head and neck and shoulders. * * * Was there any lapse of time there, in other words, did the one event occur and then time later something else occur, or did it all occur at the same time?

"A. It all occurred at one time, I mean, it was just a series."

■ In view of this testimony it cannot be said, as a matter of law, that there were two assaults, one while on the bus from which plaintiff apparently suffered no damage, and the other while on the sidewalk where plaintiff sustained the injury for which he seeks damages, and which was not related to the master's business. It seems to us that the assault committed while on the sidewalk could reasonably be considered as a continuation of the assault made while on the bus, and that the whole affair was in furtherance of the master's business.

Appellant's motion for rehearing or to transfer is denied.

RUDDY, P. J., and WOLFE, J., concur.