HENDERSON WILCOX and RAY TRUESDELL, Respondents, v. LAWRENCE COONS and OTIS TEMPLE, Appellants, No. 41931—241 S. W. (2d) 907.

Court en Banc, July 9, 1951.

Rehearing Denied, September 10, 1951.

*Charles M. Miller* for appellants.

386

*C. M. Hulen, J. W. Buffington* and *George P. Adams* for respondents.

LEEDY, J.—This is a second appeal. The parties will be referred to as they were styled in the trial court. The action (in two counts) is to determine title and in ejectment, the premises involved being a 220-acre farm in Randolph County. The first trial resulted in a directed verdict for plaintiffs upon which judgment was rendered. On the former appeal to this court that judgment was reversed, and the cause remanded. 359 Mo. 52, 220 S. W. 2d 15. Upon retrial the jury returned a verdict for plaintiffs on both counts and from the judgment entered thereon defendants prosecute this appeal. The issues are stated and the facts considered at length in the opinion on the first appeal. The second trial was held upon the same pleadings as the first except for an amendment to plaintiffs' petition (by interlineation), and as to which error is assigned. The same evidence was again produced by the parties respectively, and in addition thereto other proofs were adduced, the emphasis in this respect being on the part of plaintiffs in particulars presently to be noticed.

On and prior to June 11, 1938, Robert C. (Tuck) Collins was the owner of the farm in question. On that date he signed and acknowledged a warranty deed conveying the premises to plaintiffs, Wilcox and Truesdell, who were strangers in blood to him. Plaintiffs alleged the execution and delivery of that deed, and they rely on it as the basis of their claim of title and right to possession. Collins died January 10, 1947. He continued to live on the farm, and paid the taxes thereon until his death. Reciting a consideration of "One dollar and other valuable considerations," the deed bears date of June 11, 1938, and the certificate shows acknowledgement on the same day, but it was not filed for record until April 16, 1947, which was more than three months after the death of Collins, and slightly less than nine years after the date it was signed.

Defendant Otis Temple, a nephew of Collins and his executor, claimed title to the farm under the residuary clause of two identical wills of Collins, both made subsequent to the date of the deed. Coons' interest is merely as a tenant under a lease from Temple, so that if the latter does not have title, Coons' right to possession must fail. Defendants affirmatively pleaded in their separate answers that "if plaintiffs have a purported deed as alleged, it was never delivered." Such was the critical issue upon the trial, and on this appeal the assignment challenging the submissibility of plaintiffs' case is directed to that question.

On the first trial there was no direct evidence touching the matter of delivery, but instead plaintiffs relied on the statutory presumption thereof, raised by § 3435, R. S. '39 and Mo. R. S. A. (§ 490.410, RSMo 1949), from a properly acknowledged deed introduced in

evidence. On the former appeal it was held that such statute must. be read in connection with another section (§ 3437, R. S. '39 and Mo. R. S. A., now § 490.430, providing that neither the certificate of acknowledgement nor the proof of any such instrument shall be conclusive, but may be rebutted), and it was, therefore, reversible error, in the light of what was regarded as strong evidence against delivery (as set out in that opinion) for the trial court to have directed a verdict in favor of plaintiffs. While holding that a prima facie case was made through the introduction of the deed, the view was expressed that it appeared probable that better evidence than was produced could have been obtained by plaintiffs.

On the trial now under review, plaintiffs introduced direct evidence of the delivery of the deed. This was done through the testimony of Austin Walden, a practicing attorney of Moberly. The only point urged in connection with the sufficiency of the evidence is that it did not warrant "a holding that Collins parted with all dominion and control over the deed, and had surrendered to Walden the right of recall." It may be noted in passing that this contention is directly contrary to the defendants' express admission (appearing in connection with another point) that Walden's testimony "covered what was essential to make an effective delivery so as to pass title * * *." We limit our outline of the facts to the single challenge just mentioned.

Walden testified that on February 23, 1939, Collins came to his office (he was then in partnership with C. M. Hulen, one of plaintiffs' attorneys in the present action), and brought with him, and exhibited to the witness an envelope containing the deed in question, which, as Collins explained, had been prepared for him by Emil Gutekunst, another attorney at Moberly; that Collins said he was going to take the deed, and put it in his box, and when he was dead Wilcox and Truesdell would have the farm. After examining the instrument, and ascertaining ▮▮▮ it to be "an 'outright warranty deed without reservation of a life estate," the witness said to Collins, "Tuck, that won't be any good if you simply put it in your box, and then die with it in your box." He further told Collins "it wouldn't be a valid deed because, in my opinion, there would not be a sufficient delivery of the deed; that it was necessary for the validity of the deed that it be delivered either to the grantees, or that it be delivered to some third person for the benefit of the grantees, to be delivered upon the maker's death, and without the maker reserving any right or control over the deed. * * * In other words, I said to him, 'If you want this farm to go' to Mr. Wilcox and Mr. Truesdell, you should take this deed down to the bank and put it up with them, and tell them you are putting it up with them, and that when you die, they are to deliver it to Mr. Wilcox and Mr. Truesdell.' I explained further to him that if he did that, then his farm would be legally theirs upon his death just as fully as if he had deeded the farm to them and reserved a life estate in it;

that when he did that he had no further control over what would become of that farm, that it would be their farm upon his death."

The witness further testified that Collins then made inquiry as to whether the witness had a safe, and upon being told he did, Collins said, "Well, I will put this deed up with you, and then leave it here for you to deliver upon my death to Wilcox and Truesdell." To which the witness replied, "Well, I will take it and put it in my safe and deliver it with the understanding, of course, that if you put it up with me, then that's that; you have deeded your farm to them, and you can't take it back, and you can't change it." After their conversation was finished, witness "placed the deed back in the same envelope and wrote on a corner of the envelope the figures '2-23-39. To be delivered when Tuck dies, with no power of recall.'" When Collins left, the witness gave the envelope to his secretary and instructed her to put it in the safe.

In the following November (1939) the law partnership of Hulen and Walden was dissolved, but the former partners continued to office in the same quarters, and Mrs. Martin continued to serve each of them as secretary. Hulen retained the partnership safe. In the latter part of 1939 or early part of 1940, when Walden acquired a safe of his own, he instructed Mrs. Martin to take such papers as pertained to his business, which were in the partnership safe, and put them in his own safe. The deed in question was apparently not so removed because the next time Walden saw it was on or about April 11, 1947 (8 years later), when Mrs. Martin discovered it in the former partnership safe, and brought it to him. Collins having died in the meantime, he delivered the deed to the grantees.

Walden further testified he forgot about the deed having been left with him, and subsequently wrote a codicil and two wills for Collins (under which the farm, except for the deed, would have passed to Temple as the residuary legatee) without recalling that Collins had placed the deed with him.

Defendants contend the court should have directed a verdict for them for these reasons: (a) Plaintiffs were estopped to show delivery to Walden; (b) There was no evidence warranting a finding that Collins parted with all dominion and control over the deed; (c) Walden was an incompetent witness under the dead man's statute; and (d) Walden's understanding with Collins amounted to an oral conveyance of an interest in or concerning the farm in violation of § 3354, R. S. '39.

The charge that plaintiffs were estopped from showing delivery to Walden, thereby "changing front on the second trial after having on the first trial relied solely on a presumption of delivery of the deed" (which is raised in a variety of ways under several heads) requires scant attention. The whole contention is based on the false premise that plaintiffs' knowledge of the deposit of the deed with

Walden was "inconsistent with their position of presumptive delivery on the first trial and explodes and disproves such." An examination of the record will be found helpful. On the former appeal defendants' brief argued thus: "Neither plaintiff made any ■ effort to take the witness stand to testify as to what they knew, if anything, about the deed. They sat mute in the court room. There was no evidence from the witness stand as to the delivery of the deed to plaintiffs, or that they ever had possession of the alleged deed * * *. Such we urge was insufficient to make a case for the plaintiffs." A reversal having been induced in part upon that argument, what was the situation on the second trial? We find plaintiffs offering themselves as witnesses, but defendants objecting that they were incompetent under the dead man's statute, which was sustained. It is obvious that in offering direct evidence as to the delivery of the deed, plaintiffs were attempting to obviate any question as to a detrimental presumption (referred to in the former opinion) arising from their failure to produce more explicit and direct evidence when it was in their power to do so. In this situation, we find no semblance of a "change of front" on the part of plaintiffs, or of their "playing fast and loose, blowing hot and cold," as charged against them.

■ The contention made under (b), above, is that the fact of the codicil and the making of the two subsequent wills (each prepared by Walden) conclusively establishes Collins' right of recall, and the ending of Walden's authority, if it ever existed. But Walden's testimony, under any construction or view that may be taken of it, was amply sufficient (if believed by the jury, as it was) to warrant a finding that Collins deposited the deed with him with directions to hold it and turn it over to the grantees upon grantor's death, and that in so depositing the deed Collins reserved no dominion or control over the deed, nor any right thereto. In that view, then, delivery was complete, so that the grantor could not, by subsequently changing his intention, and by purporting to make other disposition of it by will, affect such prior delivery. Potts v. Patterson, 355 Mo. 154, 157, 195 S. W. 2d 454, 456; Blackiston v. Russell, 328 Mo. 1164, 44 S. W. 2d 22. There is nothing to the contrary either in the Indiana case principally relied on by defendants, Murrer v. Murrer, 106 Ind. App. 304, 19 N. E. 2d 494, or in those cited from Montana, California and Tennessee. The question was manifestly one for the jury, and the trial court did not err in submitting it as such instead of ruling it as a matter of law.

■ Nor did the court err in overruling defendants' objection to Walden's competency as a witness under the dead man's statute, § 1887, R. S. '39 and Mo. R. S. A. (491.010, RSMo 1949). Whatever title plaintiffs had was derived directly from Collins, and not through any contract other than the deed. The witness, who was not a party to the suit, was neither the surviving party "to the contract

or cause of action in issue and on trial" nor one under whom plaintiffs claimed. Moreover, if the statute were applicable, the plaintiffs, as the representatives of the deceased grantor (for whose benefit and protection the disqualification exists) had the right to and did waive his incompetency by calling him as their witness, as under the kindred statute in relation to privileged communications, § 1895, R. S. '39 and Mo. R. S. A. (491.060, RSMo 1949), decided on the first appeal. Our view respecting the derivation of plaintiffs' title, as expressed above in this paragraph, necessarily disposes of the further suggestion (which is not otherwise developed in defendants' brief) that under Walden's testimony the arrangement concerning the delivery of the deed amounted to an oral conveyance of an interest in the farm in violation of the statute of frauds, § 3354, R. S. '39 and Mo. R. S. A. (432.010, RSMo 1949).

██ Defendants assail plaintiffs' instruction "A", reading: "If you find and believe from the evidence that on June 11, 1938, R. C. Collins executed the deed read in evidence, and thereafter on the 23rd day of February, 1939, deposited said deed with the witness Austin Walden, and that the said R. C. Collins at said time, with intent to then convey the land in question to plaintiffs, subject to Collins' right to live on said land the remainder of his life, instructed said Walden to keep said deed and deliver the same to plaintiffs on the death of him, the said R. C. Collins, and that said witness ██ Walden delivered said deed to plaintiffs after the death of the said R. C. Collins, then there was a valid delivery of said deed and your verdict will be for plaintiffs on Count One of their petition."

It will be noted that in hypothesizing the deposit of the deed with Walden by Collins, for delivery to the grantees upon grantor's death, it required the jury to find (among other things) that such deposit was "with the intent to then convey the land in question, *subject to Collins' right to live on said land the remainder of his life * * *.*" It is objected that there was no evidence to support any such assumption or submission as that embodied in the italicized clause. The contention must be overruled if for no other reason than it overlooks the effect of transactions of this nature, as declared by this and other courts. "The delivery of a deed by the grantor to a third person, with unconditional instructions that it be held by him and delivered to the grantee upon the grantor's death, is a valid delivery, if there is no reservation by the grantor of any dominion or control over the deed, and conveys to the grantee a present interest in the land. [Citing cases.] Under these authorities, *the right of future enjoyment of the grantee is subject to the use of the grantor during his life.*" (Italics the present writer's.) Blackiston v. Russell, supra.

The instruction did not *in terms* require the jury to find that in so depositing the deed with Walden, Collins parted with all dominion and control over it, without power of recall. Defendants say this was

an essential element of plaintiffs' case, and it was reversible error to fail to hypothesize such fact in the main recovery instruction which purported to cover the whole case and directed a verdict. Furthermore, they charge that it was "written this way with the idea, we believe, of misleading the jury and keeping from the jury an essential issue of Collins surrendering all right of control of the deed or without any right of recall."; Defendants had themselves pleaded nondelivery of the deed, and the court, at their request, gave instruction "D-11," which told the jury that if they found that "it was not the intention and purpose of Collins by such delivery, if any, to part with all dominion and control over the alleged deed with the intention that he could not recall it, then your verdict must be in favor of defendants, and the court further instructs you that his intention may be shown by acts, or by words, or by both words and acts." Whatever deficiency, if any, inhered in "A" by reason of the want of a more direct submission of the fact of Collins' surrender of dominion and control over the deed was completely cured by "D-11". It is perfectly clear there was no conflict between the two—and such is not even suggested—and so the doctrine of State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984, invoked against the instruction, is not applicable.

The next assignment challenges plaintiffs' instruction "B", which, after telling the jury that Collins had a right to dispose of his land as he chose, proceeds thus: "and the question to be determined by the jury in this case is not whether the disposition of the land made by said R. C. Collins in the deed read in evidence is appropriate or in the opinion of the jury just, but simply whether said R. C. Collins executed said deed on June 11, 1938, and that there was a valid delivery of said deed as detailed in Instruction No. A."

The case was tried as one involving only one really controverted issue, namely, that of the validity of the delivery. Defendants' brief tacitly concedes as much. Witness this language, and particularly the portion we have italicized: "Plaintiffs relied upon Walden to show delivery of the deed, an integral part of the cause of action, *if not the sole cause of action in this case.*" The instruction should be viewed in the light of the course pursued by both parties at the trial. Consequently, it will be seen that "B" was in the nature of a cautionary instruction, the giving of which is ordinarily within the trial court's discretion. We think it is not subject to the objections levelled against it; that is, that it is argumentative, misleading, constitutes a comment on the evidence, and improperly restricted ▆▆▆ and prevented the jury from considering material evidence touching the question of Collins surrendering dominion and control over the deed.

The point is made that notwithstanding the fact the jury awarded only $1 as damages for the withholding of the premises,

defendants were nevertheless entitled to a proper instruction on that issue, and that they were prejudiced by plaintiffs' instruction "C" which authorized the assessment of such damages from February 5, 1947. The objection is that the time thus fixed antedated Walden's discovery of the deed and delivery of it to the grantees, the latter having been in mid-April of that year. The jury having found the issue of title in plaintiffs' favor, they would be at least entitled to nominal damages, so defendants are in no position to complain.

The complaint that it was error to refuse defendants' instruction "D-2" is based upon the assumption that there was evidence that Walden was acting as Collins' attorney at the time in question. From this it is argued that Walden was, therefore, Collins' agent, and hence without authority, after the death of his principal, to deliver the deed. Such was the theory sought to be submitted by the instruction, but there was no evidence to support it, so the court did not err in refusing to give the instruction.

Nor was there any evidence that Collins during his lifetime did recall the deed, as sought to be submitted by defendants' refused instruction "D-3". The subject-matter of defendants' refused instruction "D-7" was fully covered by instruction "D-11", given on the part of defendants. Consequently, error was not committed in the refusal of these instructions.

Defendants' refused instruction "D-8" was plainly a comment on the evidence, and properly refused for that reason. The matter need not be further developed than to say it told the jury that in determining Collins' intention and purpose in delivering the alleged deed to Walden "you may take into consideration the wills afterwards made by Collins, if any, with respect to disposition, if any, made by him thereafter to others with respect to disposition of the farm after his death, and fire and windstorm insurance policy on the buildings taken out by him, if any, and any other facts and circumstances, if any, which you may believe the evidence discloses and have direct bearing on such intention and purpose."

The court gave a conventional burden of proof instruction at defendants' request, but refused their requested special instruction on that subject, "D-10". By this instruction the jury was instructed that if they found that Collins "delivered the deed to Walden to be delivered upon his death, then the burden of proof is upon plaintiffs to prove that Collins did not reserve any right of recall during his lifetime." So far as we have been able to discover, there is no precedent for the singling out of a particular matter as to which a plaintiff may have the burden of proof, and instructing thereon separately. The practice is directly to the contrary, and the trial court did not err in acting in conformity therewith.

The defendants requested and the court refused to give their instruction "D-20", reading as follows: "The Court instructs

the jury that you believe from the evidence any witness has willfully sworn falsely to any material fact in issue, then you are at liberty to disregard any or all of such witness' testimony.''

Defendants say this was the ''usual instruction'' in relation to false swearing, but this is quite inaccurate. The proffered instruction will be at once recognized as merely a single sentence which has been lifted bodily from the conventional form of instruction on credibility of witnesses. A sufficient answer to defendants' complaint of ''grievous error and abuse of discretion'' is that the credibility of witnesses is not to be determined by the application of a single standard—that of knowingly and willfully swearing falsely. We have been cited to no case where the giving of only a fragmentary portion of a credibility-of-witnesses instruction has ever been asked, much less held to be reversible error to refuse it. There is no hint to the contrary in Price v. Lloyd Building Co., 191 Mo. App. 395, 177 S. W. 700, and Cohen v. Bridge Co., 193 Mo. App. 69, 181 S. W. 1080, relied on by defendants.

 There are ten separate matters of complaint touching Walden's examination. The first of these concerns an alleged ''build up'' of the witness (on direct examination) by permitting him to state that he had served as special circuit judge in his own circuit for a period of five or six months during the illness of the regular judge, and also that he had served as a special commissioner of this court ''in the insurance rate litigation that took place some years ago in this state.'' There was nothing improper in this showing. Preliminary questions directed toward aiding the jury in setting a proper estimate on the testimony of a witness may be properly asked, including those which relate (among other things) to his occupation. 70 C. J. 555. We have been cited to no case ruling it improper to show the official position or positions held by a witness. ''It is entirely proper, either by way of introduction or cross-examination, to identify a witness and to inquire into his residence, antecedents, social connections and occupation, particularly as they reflect his credibility either for good or bad. 70 C. J., Sec. 919; 28 R. C. L., Sec. 199, p. 610; annotation 1 A. L. R. 1402.'' Hungate v. Hudson, 353 Mo. 944, 949, 185 S. W. 2d 646, 649, 157 A. L. R. 598, 603. After the court had overruled the objection as to whether the witness had served as special judge, plaintiffs' counsel added, ''The same honored position as his Honor holds here.'' This interjectional remark is severely castigated in defendants' brief, but it is not subject to review because not objected to at the trial.

 The other complaints relate to the cross-examination of the witness. It appears from the 90 pages of cross-examination (as compared with 15 on direct) that it was rigorous (to the point of being savage), lengthy, and at times repetitious. In some instances it went beyond reasonable bounds, and many objections were interposed—

and sustained. The extent of cross-examination is largely within the discretion of the trial court, and, unless clearly abused, an appellate court will not interfere. With this rule in mind, it is apparent there was no error in limiting the cross-examination of the witness in the respects complained of, to-wit:

(A) As to how far the [former partnership] safe was from the desk where Collins executed the instruments last above mentioned;

(B) As to whether the witness would have given the deed to Collins if he "had come to you, *who was representing him*, and said to you, 'Mr. Walden, I want you to give me that deed;' '"

(C) In sustaining an objection to the propriety of this question: "Q. You don't think you forgot to destroy that deed after Tuck Collins, if he did tell you that, you don't think you forgot to?"

(D) Whether the witness considered "what Mr. Tuck Collins told you, and what you told him on February 23, 1939, as a confidential communication;"

(E) Whether his former partner, Hulen, appeared and participated in the first trial;

(F) As to whether he charged Collins a fee "for each one of those wills and the codicil." The further complaint in this connection that the court ruled in advance of any objection is without merit. It is true the transcript does show the objection followed the ruling, but on the preceding page it appears the court had, on timely and proper objection, excluded the selfsame matter. This attempt to again inject the matter in disregard of the ruling just made justified the court in repulsing it with or without further objection.

On April 12, 1947, the day after the deed was found in the former partnership safe, Walden wrote a letter to the attorney for Temple, as Collins' executor, in which, after stating that "a most unusual circumstance has occurred in the Estate of 'Tuck' Collins," he detailed the discovery of the deed, and the fact of his then recalling Collins delivering it to him. The letter then stated, "I must confess that I had completely forgotten that any such deed had been placed with me, and it was only by accident that it was discovered in the safe yesterday. * * * How this affects the situation, and the validity of the deed and the delivery, are questions of law for you to determine. I will be glad to discuss the matter with you or Mr. Temple, and tell you all I know about it, at any time." When the defendants offered the letter, objection was made and sustained to the third paragraph wherein it was stated, "* * * but there might be a question of when this delivery was effective, if it was effective at all, and if it was effective on February 23, 1939 * * *." Defendants declined to read the letter with this matter omitted, but plaintiffs did so. The excluded statements amounted to nothing more than speculation and conjecture as to the efficacy of the delivery, and, as such, should have been, and were excluded. And by the

very same token, the court was warranted in not permitting the witness to answer, on cross-examination, whether he had ever made such a statement or statements.

Plaintiffs' witness Reighard testified to the cordial relations existing between Collins and H. D. Wilcox, Sr., the father of plaintiff Wilcox, and the fact that after Wilcox, Sr., removed to Colorado, Collins visited him there; that he had frequently seen plaintiff Wilcox at Collins' home, and that there was "a very close relationship" between them. He further testified that in '37 or '38 Collins "told me that—he used to say Henderson was a fine chap and Ray, I believe he called him Red, Truesdell was a fine chap, and 'I want them to have this farm at my death.'" The jury was as much entitled to know of the background of the friendship between Collins and the plaintiffs as it was to know of the blood relationship between the former and defendant Temple. Dr. Megee, another plaintiffs' witness, testified that Collins had told him, prior to the date of the deed, "that he wanted Henderson and Red, that's what he called Mr. Truesdell, Henderson Wilcox and Red to have his farm." The desire expressed to these witnesses, that plaintiffs have the farm, was highly relevant on the question of Collins' intent and purpose in making the deed, and the court did not err in admitting such evidence.

The question of the admissibility of the rebuttal evidence touching Collins' physical and mental condition from 1942 until his death was ruled adversely to defendants and settled on the first appeal.

Upon convening of court on the morning after Walden had fixed February 23, 1939, as the date of the deposit of the deed with him, the court called attention to the fact that the fourth amended petition on which the case was tried alleged that the deed was "executed and delivered" on June 11, 1938. Whereupon, plaintiffs asked leave "to amend the petition by interlineation to conform to the proof and show delivery as of the date testified to, February 23, 1939," and this was allowed, as authorized by § 82 of the Civil Code, Laws 1943, p. 353, § 509.500, RSMo 1949. Defendants' objection to the proposed amendment was not really directed to this substitution as to the date of delivery of the deed, but seems to have proceeded on the assumption that the admissibility of evidence touching the *manner* of delivery (that which defendants call "escrowing" of the deed) was affected by the amendment, but this is not so. The proof adduced in that respect was admissible under the general allegation that the deed had been "executed and delivered" by the grantor. There was nothing to indicate that the allowance of the amendment prejudiced defendants in maintaining their defense on the merits, and the objection thereto was properly overruled.

We need not notice the charge of prejudice to defendants in the court's refusal to order restitution to them of the farm following the filing of the mandate on the former appeal, this because such

proceedings (particularly the evidence heard therein) are not embodied in the transcript.

█ Finally it is asserted that the court erred in not setting aside the verdict and █ judgment because against the weight of the evidence. There is, perhaps, no more firmly established doctrine than that on appeal from a judgment rendered on a verdict of a jury, an appellate court is not authorized to weigh the evidence. Dodd v. M-K-T R. Co., 354 Mo. 1205, 1211, 193 S. W. 2d 905, 908. Whether a jury's verdict is against the weight of the evidence is a question for the trial court alone. Nichols v. Bresnahan, 357 Mo. 1126, 1130, 212 S. W. 2d 570, 572.

Judgment affirmed. All concur except *Hollingsworth, J.*, not sitting.