**Steve J. YEAGER, Appellant,**

v.

**Ray F. BUFFINGTON, Respondent.**

**Steve J. YEAGER, Jr., Appellant,**

v.

**Ray F. BUFFINGTON, Respondent.**

**Nos. 25157, 25159.**

Kansas City Court of Appeals, Missouri.

Feb. 2, 1970.

intersection. The driver of the Ford Thunderbird (son of the owner) sued the driver of the Rambler for damages for personal injuries. The Rambler driver counterclaimed for property damage. The owner of the Ford sued the driver-owner of the Rambler for property damage. The two cases were consolidated for trial. The verdicts and judgments were against all three claimants. Mr. Steve J. Yeager, Jr. and Mr. Steve J. Yeager, Sr., driver and owner respectively of the Ford, have appealed. Mr. Ray F. Buffington, owner and operator of the Rambler, has not appealed, and the judgment as to his counterclaim has therefore become final and is not before us.

The accident occurred about 11 A.M. on December 24, 1965 in Kansas City, Missouri. The appellant Steve J. Yeager, Jr. at the time a student at the University of Kansas, was home for the Christmas holidays and was driving his father's 1960 Thunderbird south on Holmes Street, which was a north and south through street. Respondent Ray F. Buffington was driving his 1965 Rambler west on 79th Street. At this intersection Holmes was a four-lane asphalt-paved street, posted speed limit of 35 miles per hour, and about 36 feet in width. 79th Street was two lane. There were stop signs for traffic approaching Holmes on 79th, both from the east and from the west. Mr. Steve J. Yeager, Sr., a retail shoe dealer in Kansas City, was the owner of the Ford automobile.

James H. McLarney, Robert W. McKinley, Jr., Kansas City, for appellants; Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, of counsel.

William E. Simmons, George T. O'Laughlin and Miller & O'Laughlin, Kansas City, for respondent.

MAUGHMER, Commissioner.

The pending controversies resulted when two automobiles collided at a street

Mr. Yeager, Jr. said he saw the Buffington car stopped at the intersection and believed it would not enter until he had passed through. Mr. Buffington said he stopped, saw Yeager approaching, but that he thought he had plenty of time to pass through. The front of the Rambler came in contact with the left side of the Ford toward the rear.

Mr. Marvin Morlan, Kansas City police officer, arrived soon after the accident and investigated. He said he found no skid

marks indicating that brakes had been applied. This was because the pavement was wet.

Mr. (Reverend) Jonas J. Washington testified that he saw the accident. He said he was in a car facing east at 79th and Holmes; that he saw Mr. Buffington start across at about four or five miles per hour; and that he "increased his speed to get across." He estimated the Rambler was three or four feet into the southbound lane when the impact occurred. Mr. Washington thought the Yeager vehicle was about three-fourths of a block north of the intersection when Buffington started across.

Plaintiff Steve J. Yeager, Jr. was serving in the armed forces overseas at the time of the trial and therefore testified by deposition. He said he was on the way to work at one of his father's shoe stores when the collision occurred, and was traveling about 30 or 35 miles per hour. He said he first saw the Rambler stopped at the stop sign when he was about 40 yards away. He stated that Mr. Buffington, when the Ford was close to the intersection, "pulled right on out" and it was "too late * * * because he collided with me." Mr. Yeager said he applied his brakes but didn't believe he had time to sound his horn. He resumed work at the store five days after the accident. He said his back hurt. He admitted that he had hurt his back several months previously while he was wrestling. He said the stiffness in his neck, legs and back cleared up completely within a month after the accident.

Mr. Steve J. Yeager, Sr. testified that he owned the 1960 Ford Thunderbird which was equipped with air conditioning, power steering, brakes and windows. He said it was "pretty well wrecked." He thought the car was worth $1795.00 before the accident. He sold it afterwards for $244.36.

Mr. Ray F. Buffington, the defendant, testified that he was 74 years of age and retired. He said his Rambler was almost new, had been driven less than 1,000 miles, and that it was in good mechanical condition. He stated that "it had been drizzling" and the streets were wet. It was his version that he stopped at the stop sign, waited for five cars to pass, three going one way and two the other, and then moved into the intersection. He said at the time he saw two automobiles on Holmes, one moving north and the Yeager vehicle moving south; that he moved into the intersection near the center "as near as I thought it would be safe, and stopped." * * * "Because my wife or I looked north and the man was still coming,

* * *." Then he said the Ford "sideswiped the front end of my car. That headed him west. He sideswiped the telephone pole. Then he went into a skid and made a complete loop and ended up, I would say, about 10 or 15 steps from 79th Terrace." Mr. Buffington said that both participants "came up to the corner, somebody asked if anybody was hurt, everybody said no, and that was about all there was." Defendant testified it cost somewhere between $500.00 and $520.00 to repair his automobile and that it was "laid up for some little time." Mr. Yeager was alone in the Ford. Mrs. Buffington was with Mr. Buffington, but was ill at the time of trial and did not testify.

Mr. Steve J. Yeager, Jr.'s claim was submitted on the alleged primary negligence of defendant Buffington in failing to keep a careful lookout. Defendant denied the primary negligence charged and asserted contributory negligence for failure to slow, swerve or sound a warning. Mr. Steve J. Yeager, Sr.'s claim for property damage was likewise submitted on the theory that Mr. Buffington failed to keep a careful lookout. The jury was instructed (No. 8) to find for defendant "on the claims of both plaintiffs for damages if you do not believe defendant was negligent * * * and that plaintiffs sustained damage as a direct result thereof." As previously stated, the verdicts were against all three claimants.

Both Yeagers have appealed. Two assignments of error are asserted. One is that the evidence does not reasonably show that plaintiff Steve J. Yeager, Jr. should have realized there was likelihood of a collision in time to have slackened speed, swerved or sounded a warning. On this point we view the evidence in the light most favorable to the verdict and from defendant's standpoint. Page v. Hamilton, Mo., 329 S.W.2d 758. We believe defendant's evidence authorized submission of contributory negligence to the jury. In Greenwood v. Bridgeways, Inc. et al., Mo. App., 243 S.W.2d 111, 114, the court said:

"* * * Here the defendant's duty arose when he saw or by the exercise of the highest degree of care should have seen that the car in which the plaintiff was riding was likely to proceed into the path of the tractor. After this became or should have become apparent to defendant Johnson, the duty to slacken the speed of the tractor, change its course, or sound a warning, them arose and the jury should have been so instructed. * * *" (Citing cases.)

We believe the issue of contributory negligence was properly submitted to the jury. Holmes Street at 79th was 36 feet wide. Under defendant's version we believe the jury might have found that plaintiff could have swerved, slackened speed or sounded a warning in time to have avoided the accident.

Appellants' other assignment, as we understand it, is that the three verdicts considered together are inconsistent, clearly against the law and the evidence, are incredible, and that Mr. Yeager, Sr. should recover his claim for property damage even if his son was contributorily negligent. There is no contention that the negligence of Mr. Yeager, Jr. should be imputed to his father's claim for property damage. Appellants assert that either Mr. Yeager, Jr. or Mr. Buffington negligently operated his automobile, thereby causing the casualty and requiring a verdict for one or the other of them. Appellants say that the verdicts against the claims of both drivers can only be reconciled by concluding that the jury believed neither driver was negligent. They say that such verdicts are incredible since the evidence reveals no suggestion of negligence on the part of anyone else. Appellants contend that the uncontroverted physical facts establish that the negligent operation of *an automobile* caused the collision. They assert that if respondent was not negligent he should recover damages; if Yeager, Jr. was not negligent he should recover damages; and if both drivers or respondent alone was negligent, Mr. Yeager, Sr. should recover for his property damage.

Appellants invite our attention to the following from Watkins v. West, Mo.App., 297 S.W.2d 568, 570:

"* * * It was his duty to look before entering this much travelled street. Parkville Milling Company v. Massman, Mo.App., 83 S.W.2d 128, 131; Branscum v. Glaser, Mo., 234 S.W.2d 626, 627, 628. It was his duty to look and to see what was plainly visible. Failure to see what was in plain sight also constitutes negligence. Branscum v. Glaser, supra; Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131, 134. If he looked, and if he saw plaintiff's car approaching at a speed of 30 miles per hour, or *faster*, it was his duty to wait and not enter the intersection until it was safe to do so. From the evidence most favorable to plaintiff the jury could have found that he entered the intersection without looking or, if he looked, that he entered it without seeing what was obvious. The court, therefore, committed no error in submitting the case on the issue of defendant's failure to keep a lookout."

In our case the issue of lookout was submitted. Appellants also refer to the holding in Gerdel v. Broccard, Mo., 428 S.W.2d 492, declaring the rule that a driver is charged with seeing what looking would reveal, and to numerous cases that drivers must be alert for vehicles which might constitute or become immediate haz-

ards. We do not question any of these holdings. We believe they correctly enunciate recognized legal principles. However, in our opinion, appellants have not explored fully the ramifications of the verdicts. The instructions clearly authorized a verdict for respondent on the Yeager claim for property damage only upon a finding that defendant was not negligent. In our opinion, the evidence considered from defendant's standpoint, authorized submission of this issue, justified the jury's verdict, and the judgment thereon is affirmed.

Appellants say the jury verdicts against both driver claimants can only be reconciled by concluding the jury found that neither driver was negligent. We believe the jury might well have found the evidence did not meet the burden of proof requirement against either driver.

The court gave Instruction No. 2, which is M.A.I. 3.01. The footnotes on M.A.I., p. 21, tell us this instruction must be given in every case. In part it told the jury that the burden was upon plaintiffs to support their claims, and upon defendant to support his claim. The instruction tells the jury further that "If the evidence in the case does not cause you to believe a particular proposition submitted or if you are unable to form a belief as to any such proposition then you cannot return a verdict requiring belief of that proposition."

In Staten v. Estate of Rose, Mo., 435 S. W.2d 679, 683, the Supreme Court said:

"* * * However, under our jury system, a jury may find against a party on his own uncontradicted and unimpeached oral evidence. Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 560(5). * * *"

Appellants charge that the verdicts are against the weight of the evidence. The Supreme Court in Robbins v. Robbins, Mo., 328 S.W.2d 552, 556 on this point and upon the right of the jury to believe or disbelieve oral testimony, commented:

"An assignment that the verdict is against the weight of the evidence presents a matter which is essentially for the trial court." (Citing cases.) "Only in a rare case does an appellate court set aside a verdict on that ground where the trial court has ruled. Reger v. Nowotny, Mo., 226 S.W.2d 596. The assignment in itself implies that there is some evidence to support the verdict. See discussion in Palmer v. Lasswell, Mo.App., 267 S.W. 2d 492, 495, * * *. When the case depends upon oral evidence, the weight and value of all the evidence is for the jury and the trial court." (Citing cases); "and it has been said in such instances that 'Whether a jury's verdict is against the weight of the evidence is a question for the trial court alone.' Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907, 917. A jury is at liberty to believe or to disbelieve and disregard any part of the oral testimony, even though there be no controverting testimony, and to accept or reject either version of an occurrence such as this; and the burden is upon the plaintiff to persuade and convince the jury upon the oral evidence. * * * Thus, the jury may find for the defendant in a case depending on oral testimony, even though the defendant offers no testimony. * * *"

It is a firmly established doctrine that an appellate court will not weigh the evidence on an appeal from a judgment rendered on a jury verdict. Whether or not the verdict is against the weight of the evidence is for the trial court. Harris v. Quality Dairy Company, Mo.App., 423 S.W.2d 8–13. In these two pending appeals the trial court has refused to either set aside the verdicts or grant a new trial. Appellants' contentions that the verdicts are against the weight of the evidence are denied.

■ The evidence adduced shows different versions as to the cause of the collision and as to which driver, if either was negligent. Presumably the jurors commenced the trial in doubt as to the degree of negligence, if any, that was properly chargeable to either driver. That doubt might have continued up to the time of

submission. The testimony of the city patrolman Morlan and Reverend Washington was inconclusive, not convincing and failed to establish responsible fault on either driver. The testimony of each driver was somewhat indefinite—not exact or precise, both as to his own actions and as to the movements of the other participant. The verdicts were unanimous. We believe the jurors were unconvinced as to which driver's causative fault resulted in the casualty. The jurors were unwilling to speculate or hazard a guess on this ultimate question. They may have believed and by their verdicts found that neither claimant had sustained the burden of proof—had convinced them that the other contestant's negligence had caused the accident. Such findings were permissible under this evidence. Such verdicts were proper. The trial court, by its action in refusing to set aside or grant a new trial, has approved. We find no reversible error.

Both judgments are affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.