STATE of Missouri, Respondent,

v.

Robert JAMISON, Appellant.

No. ED 96449.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 1, 2012.

Maleaner Harvey, St. Louis, MO, for appellant.

Chris Koster, Timothy Blackwell, Attorney General's Office, Jefferson City, MO, for respondent.

KENNETH M. ROMINES, J.

This case involves the interpretation and application of the Interstate Agreement on Detainers, juror qualifications, and the admissibility of testimony by a complaining witness about past victimization.

### Background and Procedural History

On the evening of 7 May 2009, Kristen Binger Mayo picked up two of her friends at Lambert–St. Louis International Airport. On the way home, Ms. Mayo stopped at a gas station to get some gas. While she was pumping gas, Patrick Collins, one of the friends Ms. Mayo had picked up, went into the station to purchase a drink. After she was done, Ms. Mayo got back in the driver's seat, and Mr. Collins returned and got into the seat directly behind Ms. Mayo. The second friend, Cynthia Collins, was seated in the passenger front seat, facing sideways towards Mr. Collins. As they were preparing to leave the station a man brandishing a gun approached the car and demanded money from the occupants. All three victims got a look at the man, but Ms. Collins' description to police afterwards was the most complete.

During the subsequent investigation, Ms. Collins identified Robert Jamison (Jamison) in a photo lineup as the man who robbed them that night at the gas station. She told the police she was 100% certain of her identification. Ms. Collins again identified Jamison in subsequent live line-up, and again said she was 100% certain. Mr. Collins also identified Jamison as the perpetrator in a live line-up with 50% certainty. Ms. Mayo was unable to identify anyone in the live line-up.

Prior to the start of the trial, defense counsel made an oral motion to dismiss the case for failure to prosecute under the terms of the Interstate Agreement of Detainers Act (IAD), which the court denied.

At trial Ms. Collins testified, over Jamison's objection, that she was able to provide such a complete description and accurate identification of the suspect because she had been the victim of three previous robberies and so knew to which physical details to pay attention.[1]

The jury convicted Jamison of two counts of first-degree robbery, one count of first-degree attempted robbery, and three counts of armed criminal action. The court sentenced him to a total of 20 years.

### Standard of Review

This Court's review of Jamison's challenge to the trial court's application of the IAD is *de novo* as it raises a question of law. *State v. Vinson*, 182 S.W.3d 709, 711 (Mo.App. E.D.2006). "However, to the extent the application of the law is based on the evidence presented, we view the facts in the light most favorable to the judgment, giving deference to the trial court's factual findings and credibility determinations." *Id.*

The trial court's determination regarding the qualifications of a prospective juror and the admission of testimony is reviewed for abuse of discretion. *State v. Garvey*, 328 S.W.3d 408, 414 (Mo.App. E.D.2010); *State v. Gaines*, 316 S.W.3d 440, 451 (Mo. App. W.D.2010).

### Discussion

In his first point on appeal, Jamison claims the trial court erred in denying his motion to dismiss for violations of the Interstate Agreement on Detainers (IAD). Specifically, Jamison argues that the State failed to dispose of the charges against him within 180 days of his request. There are two fatal flaws to Jamison's claim.

The IAD is a compact among 48 states and three territories which provides for the expeditious disposition of charges and detainers emanating from other jurisdiction. *Sackman v. State*, 277 S.W.3d 304,

---

1. It is not alleged that Jamison was in any way involved in the three previous robberies.

306 (Mo.App. E.D.2009). Missouri is a signatory to the compact, which is codified at Section 217.490.[2]

Pursuant to Article V(3) of the IAD, if a person is not brought to trial within 180 days following a request for final disposition of untried indictments, informations, or complaints as required by Article III, "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

█ *Sackman,* 277 S.W.3d at 306 (citing Section 217.490). The protections provided by the IAD apply only to prisoners in the custody of a penal or correctional institution of *another* party state. *Id.* at 306–07 (emphasis added). It does not apply to those who have been discharged from the custody of another state or those who are in the custody of the State of Missouri. *Id.* at 307. Additionally, to invoke the 180 day provision of the IAD, the prisoner must submit a written request to the prosecutor's office *and* the appropriate court in the jurisdiction where the charges are pending. Section 217.490 (emphasis added). The statutory period begins to run upon receipt of the request by the both the prosecutor's office and the appropriate court. *State v. Woods,* 259 S.W.3d 552, 556 (Mo.App. S.D.2008).

█ The first flaw in Jamison's argument is that the 180 day period never began to run because Jamison did not submit his request to the appropriate entities. Jamison claims that the prosecutor's office and the appropriate court received his request for disposition no later than 5 March 2010. However, there is nothing in the record—either the record before the trial court or the record before this Court—which would indicate that any Missouri court ever received the request.[3] Without receipt of a request by the appropriate court, the statutory period never began to run, and Jamison was not entitled to dismissal for the State's failure to dispose of the charges within 180 days.

Even assuming that both the prosecutor's office and the court received Jamison's request by 5 March 2010, his reliance on the IAD is still misplaced. If Jamison's request had been received by 5 March 2010, the statutory time period would have expired on 31 August 2010. The record indicates that Jamison was discharged from federal custody in Illinois on 13 August 2010. Thus, any protection afforded him by the IAD was lost on that date. *Sackman,* 277 S.W.3d at 306–07.

█ Jamison argues that he was still protected by the provisions of the IAD after 13 August because he remained in custody—albeit in Missouri at the St. Louis Justice Center. The State of Missouri took Jamison into temporary custody on 30 April 2010. While he was never actually returned to the federal facility in Illinois, Jamison was officially discharged from federal custody when he completed his sentence on 13 August 2010. Jamison claims that as he remained in continuous custody up until the time of his trial on these charges on 24 January 2011, he also remained under the protection of IAD.

The facts of this case are strikingly similar to those in *Sackman v. State,* 277 S.W.3d 304 (Mo.App. E.D.2009). In that case, the defendant was incarcerated by the Illinois Department of Correction when he was charged by the State of

---

**2.** All statutory references are to RSMo (2010) unless otherwise noted.

**3.** At trial the prosecutor conceded that his office had a copy of the request.

Missouri with one count of possession of a controlled substance and one count of stealing. *Id.* at 305. The State lodged its detainer against defendant on 6 July 2006. *Id.* Defendant subsequently filed his request for final disposition of the charges on 11 July 2006.[4] *Id.* Defendant was paroled from his incarceration in Illinois on 17 November 2006, but was released directly to the Missouri Department of Corrections to serve time remaining on several unrelated sentences. This Court held that the defendant lost the protection of the IAD when he was transferred to Missouri's custody "because, although he was continuously imprisoned in Illinois and then in Missouri, he was no longer continuously serving a 'term of imprisonment' in 'any other party state' after he was paroled by the Illinois Department of Corrections." *Id.* at 307. Likewise, Jamison lost the protection of the IAD when he was released from federal custody on 13 August 2010, regardless of the fact that he remained in the custody of the State of Missouri. As such, the IAD provided no basis for his dismissal motion and the trial court did not err in denying it.

■ In his second point on appeal, Jamison claims the trial court erred in overruling his motion to strike a prospective juror for cause. Jamison's point is wholly without merit.

Jamison claims that venireperson Anthony Gennaro was unfit to serve because the juror indicated that he might take into account whether or not Jamison testified. Although the court denied Jamison's strike for cause, Jamison used one of his preemptory strikes against Gennaro, and Gennaro did not ultimately serve on the jury.

■ "The defense's challenge to a prospective juror's qualifications during voir dire may constitute grounds for the granting of a new trial or the reversal of a conviction only when the prospective juror actually serves on the jury and participates in the verdict rendered against the defendant." *State v. Garvey,* 328 S.W.3d 408, 414 (Mo.App. E.D.2010). "Missouri law is clear that a conviction cannot be challenged based on the trial court's failure to strike for cause a prospective juror if that prospective juror was removed by a peremptory challenge." *State v. Gill,* 167 S.W.3d 184, 194 (Mo. banc 2005). There is no constitutional violation when the jury actually seated is composed of qualified and impartial jurors. *Id.* Because venireperson Gennaro did not actually sit on Jamison's jury panel or participate in the verdict, Jamison cannot challenge the trial court's denial of his motion to strike on appeal.

■ In his final point on appeal, Jamison claims the trial court erred in allowing one of the complaining witnesses to testify that she had been robbed three times previously and through those experiences had learned to concentrate on specific details of the appearance of the assailant. At trial, Jamison objected to this testimony on the grounds of relevancy. On appeal he raises both the issues of relevancy and improper bolstering. Jamison argues that had the jury not heard evidence that the witness was experienced at identifying suspects it would have given less weight to her identification testimony. Even considering the grounds Jamison raises for the first time on appeal, the trial court did not err in admitting this evidence as it was admissible.

■ "Preliminary questions directed toward aiding the jury in setting a proper estimate on the testimony of a witness may be properly asked...." *Wilcox v. Coons,* 362 Mo. 381, 241 S.W.2d 907, 915

4. The circuit court and the prosecutor's office received the request on 20 July 2006.

(Mo. banc 1951). "It is entirely proper, either by way of introduction or cross-examination, to identify a witness and to inquire into his residence, antecedents, social connections and occupation, particularly as they reflect his credibility either for good or bad." *Id.* (internal citations omitted). In *Wilcox,* a quiet title action, a witness was called to testify as to the delivery of a deed. *Id.* at 910. On direct examination, the witness was permitted to testify that he had served as a special circuit judge and a special commissioner of the court. *Id.* at 915. Appellants claimed this testimony amounted to an improper "build-up" of the witness. *Id.* The Court held this testimony was admissible as it related to his credibility. *Id.*

While *Wilcox* does not address exactly the issue before this Court, the general principle that a witness may testify as to details from his background that affect his credibility applies. There is also secondary source support for the proposition that it is proper for a witness to testify as to his reason "for recollecting the matters which the testimony concerns." 98 C.J.S. Witnesses § 565. Ms. Collins' testimony about how the three previous robberies affected her observation of the robbery for which Jamison was being tried is the type of background information that is relevant and admissible. The trial court did not err in admitting it.

### Conclusion

The trial court committed no error in these proceedings and its judgment is affirmed.

KENNETH M. ROMINES, J., KATHIANNE KNAUP CRANE, P.J., and LAWRENCE E. MOONEY, J., concur.