

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111055 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis City |
| v. | ) | Cause No. 2022-CR00304-01 |
| | ) | |
| NORE K. EDMOND, | ) | Honorable Christopher E. McGraugh |
| | ) | |
| Appellant. | ) | Filed:  September 19, 2023 |

### Introduction

A trial jury convicted Defendant Nore K. Edmond of one count of domestic assault in the second degree and one count of unlawful use of a weapon. On appeal, Defendant challenges the trial court's denial of his motions to strike Venirepersons 25 and 31 for cause. Defendant also challenges the trial court's overruling his hearsay objection to witness R.P.'s testimony. We affirm the judgment of the trial court.

### Factual and Procedural Background

On January 17, 2020, Defendant picked up his girlfriend, Victim, at her home, and they visited a Chick-fil-A restaurant.[1] There, Defendant became irritated and showed Victim a

---

[1] The personal identifying information of Victim and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

YouTube video about a girl kidnapped by her boyfriend. Defendant and Victim argued over their food, and Defendant got mad and raised his voice.

Victim asked Defendant to take her home, but Defendant refused and began screaming at her. While driving, Defendant punched Victim in the face multiple times and displayed a handgun. Defendant loaded the gun and told Victim to "shut up and be quiet."

Defendant stopped the car at the riverfront near downtown St. Louis and ordered Victim to get out so he could shoot her. Victim refused to get out of the car because she was scared. Defendant continued to yell at Victim and hit her in the face. He brought up Victim's deceased mother and asked if Victim wanted to "lay dead next to her."

Defendant and Victim then left the riverfront, and Defendant choked Victim and hit her in the face again. Defendant displayed a knife and stated he "wanted to cut [Victim's] face up in like a checkerboard." Defendant then hit Victim with the gun numerous times. Victim was frightened and "in a state of shock."

Eventually, Defendant drove Victim to a gas station, where he spit in Victim's face. Finally, Defendant took Victim home.

After Defendant left, Victim called her friend, R.P., via video call. Victim told R.P. what happened. R.P. came to Victim's house and took pictures of Victim's injuries. Victim's face was swollen and "lopsided," her eyes were swollen, watery, and puffy, her lips were busted, and her neck was scarred. Victim was taken to the hospital for treatment.

A grand jury indicted Defendant for domestic assault in the second degree, kidnaping in the first degree, armed criminal action, and unlawful use of a weapon. The case proceeded to trial.

*Voir Dire*

During the State's *voir dire* examination, the prosecutor asked the venire panel if anyone had been hit or struck by someone they were in a relationship with at some time in their life. Venireperson 31 answered that his ex-wife had slapped him in the face during an argument. The prosecutor asked whether Venireperson 31 could set aside that incident and decide the case fairly and impartially. Venireperson 31 responded, "I'd like to think I could. I can't honestly tell you, in fact, I could." After a brief exchange, the prosecutor asked again whether Venireperson 31 could be fair and impartial. Venireperson 31 stated, "Again, I want to be truthful. I'd like to do it, but I cannot honestly say."

The prosecutor also asked the venire panel whether anyone knew a family member or close friend who was a victim of domestic violence. Venireperson 31 again answered that his current wife had been abused in a previous relationship. The prosecutor asked Venireperson 31 if he could be fair and impartial. Venireperson 31 responded, "It would be hard. It would be hard for me to do that. Again, I told you about my own personal thing. This one is even more so."

Finally, the prosecutor asked if anyone had been in law enforcement or knew someone in law enforcement. Venireperson 31 answered that his son-in-law and neighbor were members of the St. Louis Police Department. The prosecutor asked if that would affect Venireperson 31's ability to be fair and impartial. Venireperson 31 responded, "Probably not. I'm very much a supporter of policemen."

Defense counsel moved to strike Venireperson 31 for cause. Counsel argued Venireperson 31 could not be fair and impartial based on his answers to the law enforcement questions. The trial court considered counsel's argument, as well as Venireperson 31's answers to the domestic violence questions, and denied the motion. The court found that those circumstances did not have

any relation to the case and were not connected to Venireperson 31's ability to be fair and impartial, and Venireperson 31 did not exhibit an inability to follow the court's instructions. Defense counsel exercised a peremptory strike of Venireperson 31, and Venireperson 31 did not serve on the trial jury.

During defense counsel's *voir dire* examination, he asked whether anyone on the venire panel would assume that "something must have happened; that there's some reason that we're at trial; must have done something or we wouldn't be here." Some members of the venire panel responded affirmatively. One panel member stated she "would need to hear both sides to see. If he's guilty, I need evidence. If he's not, also I need evidence." Defense counsel then asked Venireperson 25 the same question, and she responded, "Yes. Something must have happened." Defense counsel asked whether Venireperson 25 would need evidence to prove Defendant's innocence. She answered, "I think it's kind of like they said. Hear both sides."

At the conclusion of *voir dire*, the trial court reminded the venire panel of the court's initial instructions:

> I told you that the defendant is presumed innocent . . . unless and until during those deliberations you believe the state has proved their case beyond a reasonable doubt and finds him guilty. And I further instructed you that the state bears the burden; that the defendant has no burden. So as to those people that responded to [defense counsel], is everyone able to follow that instruction; that the burden of proof stays with the state? Never moves to the defendant, which means [defense counsel] could be asleep during the rest of the trial. And if the state fails to prove their case beyond a reasonable doubt to you, you must, you must find the defendant not guilty.

The court repeatedly asked panel members to raise their hands if they could not follow the instructions regarding the presumption of innocence and that Defendant did not have any burden. None of the panel members raised a hand.

Defense counsel moved to strike Venireperson 25. The trial court denied the motion because Venireperson 25 "was rehabilitated through the Court's questioning." Defense counsel exercised a peremptory strike of Venireperson 25, and Venireperson 25 did not serve on the trial jury.

*R.P.'s Trial Testimony*

At trial, the State called R.P., Victim's friend, as a witness. R.P. testified that, when she answered Victim's video call, Victim was crying and her face was bruised and bloodied. Victim was stuttering, having trouble speaking, and seemed "horrified and afraid." They engaged in several calls and, having observed Victim's condition, R.P. testified, "So after that I was like [Victim], I have to take you to the hospital. And she was like no. She can't because he said that he was going to shoot up her house if she told." Defense counsel objected to "hearsay within hearsay." The trial court overruled the objection. R.P. then testified that Victim's statement scared her, so she called another friend so they could both go to Victim's house together. R.P. and her friend went to Victim's house together and took Victim to the hospital.

The jury found Defendant guilty of domestic assault in the second degree and unlawful use of a weapon, and not guilty of kidnaping and armed criminal action. In his motion for new trial, Defendant argued, among other things, the trial court erred in failing to strike Venirepersons 25 and 31 for cause. Specifically, Defendant sought to strike Venireperson 31 because he had been a victim of domestic violence and was equivocal about whether he could be fair and impartial. The trial court entered judgment on the counts of conviction, and Defendant now appeals.

**Discussion**

Defendant raises three points on appeal. In his first point, Defendant argues the trial court erred in failing to strike Venireperson 25 for cause because she stated she would need Defendant

5

to present some evidence to prove that he was not guilty. In his second point, Defendant argues the trial court erred in failing to strike Venireperson 31 for cause because he could not say whether he could be fair and impartial in a case that involved domestic violence. In his third point, Defendant argues the trial court erred in overruling Defendant's hearsay objection to R.P.'s testimony.

*Point I: Venireperson 25*

In his first point, Defendant argues the trial court erred in failing to strike Venireperson 25 for cause because she stated she would need Defendant to present some evidence to prove he was not guilty. A trial court's ruling on a challenge for cause is reviewed for abuse of discretion. *State v. Johnson*, 284 S.W.3d 561, 580 (Mo. banc 2009).

"The defense's challenge to a prospective juror's qualifications during voir dire may constitute grounds for the granting of a new trial or the reversal of a conviction only when the prospective juror actually serves on the jury and participates in the verdict rendered against the defendant." *State v. Jamison*, 365 S.W.3d 623, 627 (Mo. App. E.D. 2012) (quoting *State v. Garvey*, 328 S.W.3d 408, 414 (Mo. App. E.D. 2010)). "Missouri law is clear that a conviction cannot be challenged based on the trial court's failure to strike for cause a prospective juror if that prospective juror was removed by a peremptory challenge." *Jamison*, 365 S.W.3d at 627 (quoting *State v. Gill*, 167 S.W.3d 184, 194 (Mo. banc 2005)). There is no constitutional violation when the jury actually seated is composed of qualified and impartial jurors. *Jamison*, 365 S.W.3d at 627.

Defense counsel exercised a peremptory strike of Venireperson 25, and Venireperson 25 did not serve on the trial jury or participate in the verdict. Accordingly, Defendant cannot challenge his conviction based on the trial court's denial of his motion to strike Venireperson 25 for cause. *See id*.

6

Even if Defendant's point did not fail as a matter of law, the trial court did not abuse its discretion in denying Defendant's motion to strike Venireperson 25 for cause. "A juror's qualifications are not determined conclusively by a single answer but rather from the entire voir dire examination." *State v. McFadden*, 369 S.W.3d 727, 738 (Mo. banc 2012). "The trial court is in the best position to evaluate a venireperson's commitment to follow the law and is vested with broad discretion in determining the qualifications of prospective jurors." *Id.* (quoting *State v. Clayton,* 995 S.W.2d 468, 475 (Mo. banc 1999)).

A prospective juror may be excluded for cause when "the juror's views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and his or her oath." *McFadden*, 369 S.W.3d at 738 (internal alterations omitted). If a prospective juror makes a statement that indicates bias, the trial court may further question the juror to allow the juror to give unequivocal assurances of impartiality. *White v. State*, 290 S.W.3d 162, 166 (Mo. App. E.D. 2009). A prospective juror's silence in response to a direct question posed to the entire venire panel can provide an "unequivocal assurance of impartiality for the purpose of rehabilitation." *State v. Spradling*, 633 S.W.3d 494, 501 (Mo. App. S.D. 2021) (finding that prospective jurors were rehabilitated by not affirmatively answering that they would not follow the Court's instructions).

Here, in response to defense counsel's question whether she would need evidence to prove Defendant's innocence, Venireperson 25 expressed the need to "[h]ear both sides." Whether or not her answer suggests a misunderstanding of the presumption of innocence and the burden of proof, we do not view this singular answer in isolation. At the conclusion of *voir dire*, the trial court reiterated its instructions that Defendant was presumed innocent and bore no burden of proof. The court repeatedly and unequivocally confirmed that all members of the venire panel, including

Venireperson 25, could follow those instructions. *See Spradling*, 633 S.W.3d at 501. The trial court did not abuse its discretion in declining to strike Venireperson 25 for cause.

Point I is denied.

*Point II: Venireperson 31*

In his second point, Defendant argues the trial court abused its discretion in failing to strike Venireperson 31 for cause because he could not say whether he could be impartial in a case involving domestic violence.

The State responds that Defendant failed to preserve this issue for appellate review because he did not maintain the same theory in his objection at trial, motion for new trial, point relied on, and the argument section of his appellate brief.

The State is correct insofar as Defendant, in his second point relied on, raises Venireperson 31's potential bias due to his experience with domestic violence, but does not develop that issue in the argument section of his brief. Defendant's argument section makes only a single mention that Venireperson 31 "had been struck by his wife in a similar domestic violence scenario," without elaboration. Otherwise, Defendant's argument is exclusively that Venireperson 31 could not be fair and impartial due to his relationships with police officers, an issue not raised in his point relied on.

Rule 84.04 requires an appellant's point relied on to "[i]dentify the trial court ruling or action that the appellant challenges" and "[s]tate concisely the legal reasons for the appellant's claim of reversible error." Rule 84.04(d)(1).[2] The Rule also mandates the argument section of the appellant's brief "shall be limited to those errors included in the 'Points Relied On.'" Rule 84.04(e). Defendant's Point II fails to comply with Rule 84.04 and preserves nothing for our

---

[2] All rule references are to the Missouri Supreme Court Rules (2022) unless otherwise indicated.

review. *See State v. Murphy*, 665 S.W.3d 377, 378 (Mo. App. E.D. 2023) (dismissing appeal for failure of points relied on to comply with Rules 84.04(d) and (e)); *A.C.C. v. S.B.*, 568 S.W.3d 895, 897 (Mo. App. E.D. 2019) (same).

Even if Point II complied with Rule 84.04, Defendant's argument that Venireperson 31 could not be fair and impartial due to his relationships with police officers was not preserved for appeal. In his motion for new trial, Defendant raised only that the trial court erred in failing to strike Venireperson 31 for bias due to his experience with domestic violence, not his relationships with police officers. Points raised on appeal that were not raised at trial or in a motion for new trial are not preserved for appeal. *See Edwards v. State*, 636 S.W.3d 606, 614 (Mo. App. E.D. 2021) ("A point on appeal must be based upon the same theory voiced in the objection at trial and an appellant cannot expand or change on appeal the objection as made." (internal quotations omitted)); *State v. Fields*, 624 S.W.3d 414, 418 (Mo. App. W.D. 2021) ("The theory upon which the objection was made must be the same theory that is presented in the motion for a new trial *and the same theory that is raised on appeal*." (emphasis in original)). Therefore, Defendant's argument regarding Venireperson 31's bias due to his relationships with police officers would be subject to only plain error review.

Plain error is error that is evident, obvious, and clear. *State v. Harris*, 658 S.W.3d 135, 145 (Mo. App. E.D. 2022). "In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review." *Id.* at 146 (quoting *State v. Osborn*, 504 S.W.3d 865, 872 (Mo. App. W.D. 2016)).

Regardless whether we review for abuse of discretion or plain error, Defendant's Point II fails. As we explained regarding Venireperson 25, Defendant cannot challenge the trial court's denial of his motion to strike Venireperson 31 for cause because Defendant exercised a peremptory

strike of Venireperson 31 and Venireperson 31 did not serve on the trial jury. *See Jamison*, 365 S.W.3d at 627. For this reason, the trial court's failure to strike Venireperson 31 for cause is neither an abuse of discretion nor evident, obvious, and clear error.

Point II is denied.

*Point III: Defendant's Hearsay Objection*

In his third point, Defendant argues the trial court erred in overruling Defendant's objection to witness R.P.'s testimony because it contained hearsay within hearsay.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Wright*, 551 S.W.3d 608, 616 (Mo. App. E.D. 2018). "The trial court is vested with broad discretion to exclude or admit evidence at trial." *Id.* We will reverse only if the defendant establishes both error and prejudice from the trial court's evidentiary ruling. *Id.*

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *State v. Cole*, 483 S.W.3d 470, 474 (Mo. App. E.D. 2016). Statements not offered for the truth of the matter asserted are not hearsay. *State v. Allen*, 597 S.W.3d 420, 432 (Mo. App. E.D. 2020). Hearsay generally is inadmissible unless it falls within a recognized exception to the hearsay rule. *Cole*, 483 S.W.3d at 474. "A hearsay statement contained within other hearsay evidence is admissible only where both the statement and the original hearsay evidence are within exceptions to the hearsay rule." *State v. Sutherland*, 939 S.W.2d 373, 377 (Mo. banc 1997).

The testimony of R.P. at issue here may be separated into three statements. First, R.P. testified that, upon seeing Victim crying, her injuries, and that she was afraid, R.P. told Victim, "I have to take you to the hospital." This statement was R.P.'s expression of her own present intent and then-existing plan to take Victim to the hospital. A declarant's statement of her then-existing mental state, including a then-existing plan to do a particular act in the immediate future, is a

10

recognized exception to the hearsay rule. *See State v. Rios*, 234 S.W.3d 412, 423 (Mo. App. W.D. 2007); *see also State v. Buckner*, 810 S.W.2d 354, 358 (Mo. App. W.D. 1991) ("A declaration that indicates a present intention to do a particular act in the immediate future, relevant to a fact in issue, is admissible to prove that the act was in fact performed.").

Second, R.P.'s testimony to Victim's statement that she could not go to the hospital "because [Defendant] said that he was going to shoot up her house if she told" was admissible because Victim's statement was not hearsay. Victim's statement frightened R.P. As a result, R.P. called a friend, and R.P. and her friend went to Victim's home together and took Victim to the hospital. Victim's statement was offered not for the truth of the matter asserted but to explain R.P.'s subsequent actions. "[S]tatements that are not offered for the truth of the matter asserted, but rather to explain subsequent actions, are not hearsay." *State v. Taylor*, 373 S.W.3d 513, 520 (Mo. App. E.D. 2012) (quoting *State v. Barnett*, 980 S.W.2d 297, 306 (Mo. banc 1998)).

Victim's statement also may be characterized as an excited utterance. The excited utterance exception to the hearsay rule applies when "(1) a startling event or condition occurs; (2) the statement is made while the declarant is still under the stress of the excitement caused by the event and has not had the opportunity to fabricate the story; and (3) the statement relates to the startling event." *State v. Riley*, 440 S.W.3d 561, 566 (Mo. App. E.D. 2014) (quoting *State v. Hedges*, 193 S.W.3d 784, 788 (Mo. App. E.D. 2006)). Here, the startling event was Defendant's punching, choking, and pistol-whipping Victim, displaying a firearm and a knife, and threatening to kill Victim. That event frightened Victim and put her "in a state of shock." While apparently still under the stress of the event, crying, stuttering, and "horrified," Victim told R.P. that she could not go to the hospital because of Defendant's threat.

Third, R.P.'s testimony to Defendant's statement to Victim that he "was going to shoot up her house if she told" was admissible because Defendant's threat was an admission of a party opponent. An admission of a party opponent is not hearsay. *State v. Stokes*, 492 S.W.3d 622, 625 (Mo. App. E.D. 2016) ("A statement may be admitted as the admission of a party opponent if it is relevant and material to the case and is offered by the opposing party.").

Finally, even if all or some of R.P.'s testimony amounted to inadmissible hearsay, the record otherwise is replete with admissible evidence of Defendant's multiple threats to shoot Victim, cut up her face with a knife, and kill her. We perceive no undue prejudice from the admission of R.P.'s testimony to Defendant's threat to shoot up Victim's house. *See State v. Mack*, 301 S.W.3d 90, 96 (Mo. App. S.D. 2010).

The trial court did not abuse its discretion in overruling Defendant's hearsay objection to R.P.'s testimony. Point III is denied.

## Conclusion

For the forgoing reasons, we affirm the judgment of the trial court.

_____
Cristian M. Stevens, J.

Robert M. Clayton, III, P.J., and
Philip M. Hess, J., concur.

12